WILLIAM PHIPPS & others *vs.* PRESIDENT, DIRECTORS, &c
OF THE MILLBURY BANK.

A bank that receives from another bank, for collection, a note indorsed by the
cashier of that bank, is bound to present the note to the maker for payment at
maturity, and, if it is not paid, to give notice of non-payment to the bank from
which the note was received; but is not bound, unless by special agreement, to
give such notice to the other parties to the note.

THIS was an action to recover the amount of a promissory
note for $254, signed by D. G. Chase and H. O. Brown, dated
March 29th 1842, payable to Silas Chase, or order, at the Mill-
bury Bank, in six months after date, and indorsed in blank by
said Silas.

The parties agreed on the following facts : " The plaintiffs,
being holders and owners of said note, indorsed it in blank, and
left it at the Suffolk Bank in Boston for collection. The cashier
of that bank having indorsed said note as follows ; ' pay R. B.
Chapman, cashier, or order: J. C. Brewer, cashier ; ' sent it to
the Millbury Bank for collection; and said Chapman, who was
cashier of said bank, received it. At the maturity of said note,
on the last day of grace, it being unpaid, within bank hours, by
the makers, said Chapman, assuming to act and acting as a notary
public, which office he held, received said note of said bank,
and in that capacity protested the same, as such notary public,
in due form of law ; and on the same day, after bank hours, as
such notary public, directed notices to the second and last indor-
sers "(the plaintiffs) " of the non-payment of said note, enclosed
to said J. C. Brewer, cashier, Boston ; placing said notices in
the post office in Millbury.

" At the making of said note, Silas Chase, the first indorser,
lived in Millbury, about one mile from the bank and the post
office near the bank ; but, before the maturity of the note, had
removed to Sutton, an adjoining town. Said Chapman, as notary
public, when he went to the post office, to deposit the notices,
after bank hours, inquired of the clerk having charge of said post
office, whether said Chase lived in Millbury, and was informed by
said clerk that he did ; and then said Chapman, on the same day

deposited a notice in said post office in said Millbury, of the non-payment and protest, directed to Silas Chase in Millbury. Subsequently, the present plaintiffs commenced an action against said Silas Chase, as indorser, and it appearing that the notice of non-payment and protest was as above stated, the judgment of this court was rendered against them. See *Phipps* v. *Chase,* 6 Met. 491.

" The business of the bank" (the defendants) "in the collection of notes transmitted for collection is managed by the cashier, and no special action or vote of the directors was had in relation to said Chase's note, or the collection thereof."

It was agreed by the parties that the defendants should be defaulted, if the plaintiffs, on the foregoing facts, were entitled to maintain their action; otherwise, that the plaintiffs should become nonsuit.

*F. H. Dewey,* for the plaintiffs. The defendants are responsible for the loss sustained by the omission of their cashier to give a notice to the first indorser, which would bind him to the plaintiffs, on his indorsement. *Fabens* v. *Mercantile Bank,* 23 Pick. 332. *Mechanics Bank* v. *Merchants Bank,* 6 Met. 20, 21. *Smedes* v. *Bank of Utica,* 20 Johns. 384, and 3 Cow. 662. *McKinster* v. *Bank of Utica,* 9 Wend. 48. *Bank of Washington* v. *Triplett,* 1 Pet. 25. *Salem Bank* v. *Gloucester Bank,* and *Foster* v. *Essex Bank,* 17 Mass. 20, 511. In 12 Mod. 490, Lord Holt says, " where a trust is put in one person, and another, whose interest is entrusted to him, is damnified by the neglect of such as that person employs in the discharge of that trust, he shall answer for it to the person damnified." The trust of doing the acts necessary to maintain a suit against the parties to the note was put in the defendants, and it was the official duty of the cashier appointed by them, to discharge that trust. *Hartford Bank* v. *Barry,* 17 Mass. 97.

The defendants cannot resist this action on the ground that the law as to notice to indorsers was doubtful in this instance. It was long since settled, that such notice as was given is deficient and of no avail.

It may be argued by the defendants, that their cashier acted

as notary public, in giving the defective notice and making the protest, and that they are not therefore responsible for his acts or omissions. But as no notarial act was required, the notary was their agent, and they should be held responsible. *City Bank* v. *Cutter*, 3 Pick. 414. Bayley on Bills, (2d Amer. ed.) 261 *Allen* v. *Merchants Bank*, 22 Wend. 215.

*Randall*, for the defendants. The case does not show any express agreement of the defendants to give notice to the first indorsers, nor any implied agreement so to do, resulting from instructions. The question, therefore, whether the defendants are liable for not giving such notice, depends wholly upon general principles.

The note having been last indorsed by the cashier of the Suffolk Bank, and transmitted to the defendants for collection, that bank, so far as the defendants were concerned, was the legal holder, and whatever duty devolved on the defendants, was a duty to that bank alone. *Mead* v. *Engs*, 5 Cow. 303. *Howard* v. *Ives*, 1 Hill's (N. Y.) Rep. 263. *Bank of U. States* v. *Davis*, 2 Hill's (N. Y.) Rep. 451. *Burnham* v. *Webster*, 1 Appleton, 232. Bayley on Bills, (2d Amer. ed.) 269. *Freemans Bank* v. *Perkins*, 6 Shepley, 292. *Ogden* v. *Dobbin*, 2 Hall, 112. The duty of the defendants was to have the note at their own counter on the last day of grace, ready to be given up on payment, and if it was not paid, to give notice of its dishonor to the Suffolk Bank. 3 Met. 496, 497. And this was their whole duty. *Bank of U. States* v. *Goddard*, 5 Mason, 366.

The defendants were agents of the Suffolk Bank, and an agent of the holder is not bound to give notice to prior indorsers *Colt* v. *Noble*, 5 Mass. 167. 1 and 2 Hill, *ubi sup.* Bayley on Bills, (2d Amer. ed.) 267. Story on Bills, § 388. *Morgan* v *Van Ingen*, 2 Johns. 204. *Eagle Bank* v. *Chapin*, 3 Pick. 180 *Church* v. *Barlow*, 9 Pick. 547. These cases, it is true, were between holders and indorsers; but they turned upon the duty of agents to their principals.

If there has been any laches in this case, it was either in the Suffolk Bank, in not giving due notice to the plaintiffs, or

in the plaintiffs themselves, in not giving notice to the prior indorsers.

If it be said that there is a well settled usage of banks, that receive notes for collection, to take steps to give notice to indorsers, in case of dishonor, which usage was the foundation of an implied contract, or of a duty, so to do in the present case, in the absence of instructions; the answer is, that the case finds no such usage, and none has been judicially recognized in this Commonwealth. The court therefore cannot notice such usage, even if it exists. 2 Bur. 1226. 1 Bl. Com. 75, and Chitty's *note* (13.) A further answer is, that if there be such a usage, it is *ex gratia,* and constitutes no part of the duty of a bank ; and evidence of it would not be admitted on a question of implied liability. *Mead* v. *Engs,* 5 Cow. 304, 309. Besides; such a usage ought not to be adopted as law, because it is unreasonable, and, in a case like the present, where no instructions were given, nor any information as to the residence of the prior indorsers, it would operate unjustly.

The dictum in *Fabens* v. *Mercantile Bank,* 23 Pick. 332, that when a bank receives a note for collection, it is bound, by a general usage, to give due notice, in case of dishonor, to the indorsers, was extrajudicial. There is, perhaps, a local usage which binds banks in New York to give such notice. The case of *Smedes* v. *Bank of Utica* seems to have recognized such usage, and its binding effect on the banks in that State.

But if there was any implied obligation of the defendants to take the usual steps to charge the indorsers, it is submitted that they have discharged their whole duty in this respect. Being a corporation, they must act by substitution ; and by putting the note into the hands of a notary public, who was *ex officio* a competent agent, their duty was performed. Thenceforward, the notary was the agent of the parties to the note, and they alone are responsible for his non-feasance or misfeasance. *Smedes* v. *Bank of Utica,* 20 Johns. 372. *Bellemire* v. *Bank of U. States,* 1 Miles, 173, and 4 Whart. 105.

*Bacon,* also for the defendants. The case finds that the cashier *acted as notary.* The defendants were therefore dis-

charged by handing the note to him, although it was not necessary that a notary should be employed. In *Allen* v. *Merchants Bank*, 22 Wend. 215, the court held the bank liable for the default of the notary, on the ground that he acted, *pro hac vice*, as agent of the bank, and not in his official capacity.

*Washburn*, in reply. The ground taken by the defendants, that they were agents of the Suffolk Bank only, and not of the plaintiffs, is untenable. The case finds that the plaintiffs were the owners of the note, and that they deposited it in the Suffolk Bank for collection merely. That bank, therefore, though the legal holder, for the purpose of collection, was not the only party for whom the defendants were agents.

The plaintiffs do not deny the doctrine of the case of *U. S. Bank* v. *Goddard*, and of the like cases cited for the defendants. In those cases, the agent gave due notice of dishonor to the real *owners* of the note or bill, so that they had opportunity to resort to the prior parties.

HUBBARD, J. The object of the present suit is to charge the defendants with negligence in not duly giving notice to the first indorser of a note sent to them for collection, in consequence of which the indorser was discharged. The counsel for the plaintiffs contend, that the defendants were bound to give proper notice to all the indorsers, and that, failing in this duty, they are liable for the damages. As no special agreement is shown in the present instance, the case is to be decided upon the principles of the mercantile law regulating bills of exchange and promissory notes.

The note was the property of the present plaintiffs, and was left by them at the Suffolk Bank, for collection, and by that bank was transmitted to the bank in Millbury, where the note was payable. No question has been raised whether the plaintiffs can maintain, in their own names, the present action ; and if it had been raised, perhaps it may be considered as settled by the case of *Fabens* v. *Mercantile Bank*, 23 Pick. 330. The only question is, whether the defendants were bound by law duly to give notice to all the indorsers ; it being admitted that

the notice actually given by the cashier, acting as notary public, to the first indorser, was insufficient to bind him.

In a subject of such constant recurrence as the remitting of bills and notes from one part of the country to the other, for collection, it is of the greatest importance that the duties of the respective parties should be clearly understood, and at the same time, so far as is practicable, that there should be a uniformity of practice. In this case, the defendants were the immediate agents of the Suffolk Bank, who appeared, by the indorsements on the note, to be the real owners; and whether interested or not in the proceeds, they were in law, so far as the defendants were concerned, the owners to whom the defendants were responsible. Acting as such agents, they were bound to make a legal demand of payment of the promisors, and upon nonpayment, to give due notice of the dishonor to the Suffolk Bank, the holders, to enable them to give notice to such parties on the note as they intended to look to for payment. This I consider to be all their duty ; and to bind them to give notice to all the indorsers, there must be some special agreement between them. The indorsers may not be known to them, nor their place of residence; and the paper not having been discounted by them, they have not the ordinary means of knowledge. If banks, thus receiving notes for collection, are to be held bound to give notice to all indorsers, and to be made responsible for any neglect in the right performance of the duty, the service will be too onerous, and a check will be put to the discount of notes payable at a different place from that where the parties are established or reside, to whom the note is offered for discount ; and every such check is injurious to the domestic trade of the country. But where the duty of the party, to whom a bill or note is sent for collection, is simply to demand payment of the acceptor or promisor, and if not paid, then to return it to the holder, there no embarrassments need arise. The parties are known, and the agent's duty is plain and explicit.

A case was cited by the plaintiffs' counsel, (*Smedes* v. *Bank of Utica*, 20 Johns. 372,) which supports the doctrine that a

bank receiving a note from another bank, for collection, is bound to give notice to all the indorsers. But the court. in giving their opinion, cite no authority in support of the doctrine. They rest it on the ground of established custom and general understanding, as proved in that case by witnesses. We are not aware of any such usage in this State, binding on banks that receive bills and notes from other banks for collection. The bank may indeed notify, and such notice will avail for the benefit of different parties on the bill or note, but their duty is performed by demanding payment of the acceptor or maker, and, on refusal to pay, by giving due notice to the party from whom they received it. This, we think, is distinctly decided in cases which have arisen in this Commonwealth. The first is that of *Colt* v. *Noble*, 5 Mass. 167, where the bill was drawn at New South Wales, and payable in London, in favor of the defendant, a shipmaster, who negotiated it at Madras, while on his voyage; but he lived in Portsmouth, New Hampshire. The bill was sent to London, and was there protested for non-acceptance and non-payment, and was returned to Madras, to the house which had remitted it, who gave the defendant notice from Madras, in a reasonable time. It was agreed that the agents might have sent direct notice to the defendant in three months, and that it was not done. But the court held, that the agents, after procuring the regular protests of the bill, had discharged their duty in returning the bill and protests to their principals; and the indorser was charged upon the notice received from Madras.

The next case is that of *Eagle Bank* v. *Chapin*, 3 Pick. 180. The plaintiffs, a bank in Connecticut, were owners of a note payable at a bank in New York, and the defendant, the indorser, lived in Springfield, in this State. The note was presented at the bank in New York for payment, and was refused, and the notary forwarded a notice for the defendant to the owners, at New Haven, and by them notice was given to the defendant. It was in that case contended, that due diligence was not used in giving notice to the indorser, and that it ought to have been sent to him direct from New York. But the court held, that

sending the notice, in the first instance, to the holders in Con-necticut, was sufficient. The same point is also settled in the case of *Mead* v. *Engs*, 5 Cow. 303, where it was held, that a bank, that is a mere agent to collect a bill or note, is not bound to give notice to all the prior parties, but that it is sufficient to give notice to the next immediate indorser. And so is the case of *Haynes* v. *Birks*, 3 Bos. & Pul. 599.

But it was contended, in the case at bar, that where the residence of the indorser is known to the bank that receives the note for collection, and, *a fortiori*, where he lives in the same or an adjoining town, such bank is bound to give notice to him. This point, however, has also been directly decided in the case of *Bank of U. States* v. *Goddard*, 5 Mason, 366. There the note was given by J. K. Pickering, in Portsmouth, N. H., and made payable at the U. S. Branch Bank in Boston, to the defendants, who lived in Boston. The owners of the note were the U. S. Branch Bank in Portsmouth, who sent it to the Branch Bank in Boston for collection; and on payment being refused, the protest and notices were sent to Portsmouth, and from Portsmouth, notice was first given to the indorser. The case was thoroughly argued, and an elaborate opinion given, by the learned judge of the circuit court of the United States, in favor of the plaintiffs, that the agent was not bound to give notice of the dishonor to the indorser, even though living in the same place, but only to his principal. The same general question arose in the case of *Howard* v. *Ives*, 1 Hill's (N. Y.) Rep. 263, and was decided in the same manner. See also *Bank of U. States* v. *Davis*, 2 Hill's (N. Y.) Rep. 451.

In the present case, as the note was received for collection by the defendants in the usual manner, without special directions, and due notice of the non-payment was regularly given to the Suffolk Bank, from whom they received it, we think the defendants have executed the trust by law imposed upon them.

Whether the cashier of the bank, when acting in his capacity of notary public, is to be considered as the mere agent of the bank in protesting the bills and notes sent to it for collection, or as an independent officer, and, as such, personally responsi

ble for his own acts, it is not necessary now to determine.   If he had received special instructions from the bank itself to give notice to all the indorsers, and had so negligently discharged his duty as to exonerate an indorser ; or if the cashier had informed the Suffolk Bank, or the plaintiffs, that he had given notice to the first indorser, and had led either of them into error in consequence of it, the question would be a very different one from that now presented for our consideration.

The principle determined by us is this ; that a bank, receiving from another bank a note for collection, is bound to present the same for payment, and if the same is not paid at maturity, to give due notice of the dishonor to the bank from which they received it, and is not required by the law merchant, as known and practised upon in this Commonwealth, to give notice to all the other parties to the note, where there is no special agreement to do it ; and that the defendants, having discharged their duty, are guilty of no laches, and are not responsible to the plaintiffs.

*Plaintiffs   nonsuit.*