S E V E N LARGE FERMENTING TUBS (UNITED STATES v.). See Case No. 16,-254.

SEVENTEEN EMPTY BARRELS (UNITED STATES v.). See Case No. 16.255.

SEVENTEEN PACKAGES, ETC. (UNITED STATES v.). See Case No. 16,256.

SEVEN THOUSAND EIGHT HUNDRED BUSHELS OF OATS (CHUBB v.). See Case No. 2,709.

---

## Case No. 12,678.

SEVENTH WARD BANK v. HANRICK.

[2 Story, 416.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1843.

NOTES—NOTICE OF DISHONOR—WHEN TO BE GIVEN—EXTENSION OF TIME—RELEASE OF INDORSER.

1. Where a note became due on Saturday, and was duly presented and dishonored, and the indorser lived in another state: It was *held*, that notice of the dishonor should, in order to bind the indorser, be put into the mail of the succeeding Monday, early enough to go by the mail of that day to the place of residence of the indorser, it appearing that the mail on that day did not close until half-past three o'clock p. m.; otherwise the indorser would be discharged.

[Cited in Lawson v. Farmers' Bank of Salem, 1 Ohio St. 214.]

2. If, after a note is dishonored, and notice is given to the payee, who is the first indorser, an arrangement be made with the holder, by the maker of the note, and the subsequent indorsers thereon, without the consent of the payee, to prolong the credit, and to discount, by way of renewal, certain bills, drawn by the maker and one of the indorsers, and duly accepted, for the amount of the note, and in the mean time, and until the maturity of the bill, the note is to be deemed extinguished as to the maker, and the indorsers, who have given the bills, the original payee of the note is discharged thereby.

This was an action of assumpsit, originally commenced in the state court, and removed from thence to this court, the plaintiffs [the president, directors, etc., of the Seventh Ward Bank], being a corporation in New York, and the defendant [Edward Hanrick], a citizen of Alabama. The action was brought on the following promissory note: "New York, October 31, 1835. Ten months after date I promise to pay at the Seventh Ward Bank to the order of Mr. Edward Hanrick five thousand two hundred and ninety-one dollars seventeen cents. value received." Signed "James G. Kelly." The note was indorsed by the defendant (Edward Hanrick) in blank, and successively afterwards by Moreley Hooker, and F. A. Lawrence; and was discounted by the bank, who now sued as indorsees. Plea, the general issue. At the trial it appeared in evidence, that all the parties, except Lawrence, belonged to Alabama. Lawrence lived in New York; and the note was discounted at the instance of a Mr. Greenfield, one of the directors, and the money received by Hanrick, who was, in fact, a mere accommodation payee and indorser, the money being received by him for Kelly, the maker of the note, and Hooker, the indorser, to whom it was paid in equal moieties. At the time when the note became due (on Saturday, the 3d of September, 1836), payment was demanded

---

at the bank by one of the tellers for the bank, but the maker having no funds then in the bank; it was dishonored; and it was protested by the notary of the bank for nonpayment, on the same day. He, however, had not presented the note for payment, but it was done for him by a teller at the bank, although his notarial certificate very improperly stated, that he had personally made the presentment. A written notice addressed to Hanrick was put into the post office at New York on the following Monday, addressed to Hanrick at his residence in Montgomery, Alabama. There was conflicting testimony on the point, at what time of the day the notice was put into the post office. On the one hand, a brother of the notary, who was his clerk, stated, that he put the notice into the post office on the next Monday morning. On the other hand, a teller of the bank stated, that he, and not the notary's clerk, put it into the post office after seven o'clock in the evening of the same Monday, and he detailed particular circumstances in corroboration of his statement. The southern mail was closed at the post-office on Monday at half-past three o'clock, p. m.; and it was proved by a post-office clerk, that if the notice had been put into the office before that time, it would have been sent, in the usual course of things, by that mail, and post-marked (stamped) the 5th of Sept. If put in after that time, it would have been post-marked the 6th of Sept.; and the office did not close until 7 o'clock in the evening. The notice was produced in evidence by Hanrick, and it had the post-mark of New York, the 6th of September. There was other evidence introduced by both the parties upon this point of the notice, which was submitted to the jury.

STORY, Circuit Justice, stated to the jury, on this point, that by law it was essential, under the circumstances, to charge Hanrick, that the letter should have been put into the post-office at New York on Monday, early enough to have gone by the southern mail of that day; and if the plaintiffs, or their agents, were guilty of negligence in not putting it into the post-office in time to go by the southern mail of that day, the defendant was discharged from his liability as indorser. He added, that the onus probandi of due notice to Hanrick was upon the plaintiffs; and if the jury were not satisfied, beyond a reasonable doubt, that the notice was not duly given, that doubt would justify a verdict for the defendant. And after commenting upon the evidence, he left the point with this direction to the jury.

Another point made in the defence was, that by subsequent arrangements made between the bank and the other parties to the note, except Hanrick, and without his consent, a prolonged time had been given to those parties for the payment of the debt due on the note; and thereby he was discharged therefrom. As to this point, it appeared in evidence, that after the note was dishonored, Lawrence (the indorser) went to Montgomery, Alabama, with the view of arranging the matter, partly for the bank, and partly for his own protection. He there saw Hooker and Hanrick, who admitted, that they had received notice of the dishonor; and he tried to prevail upon them to renew the paper; Hooker was willing and consented to make new paper; Hanrick refused to have any thing to do with it, saying that he would not assume any further responsibilities; and he refused to indorse any new paper. Afterwards, by arrangements between Lawrence, and Hooker, and Kelly, three bills of exchange were drawn; two were drawn by Kelly and accepted by Hooker, and one was drawn by Hooker, and accepted by Kelly. All the bills were drawn payable at Mobile, Alabama; one dated Sept. 28, 1836, payable at seventy days, for $1,879.50; one of the same date, payable at ninety days, for $1,890; one of the same date, payable at one hundred and twenty days, for $1,950.50; in all $5,720. Lawrence was on all the drafts as indorser; and they were by him procured to be discounted at the bank, on the 11th of October, 1836, the bank deducting five per cent as the rate of exchange on Mobile, and interest for the time the bills had to run. The balance was then carried to the credit of Lawrence on the books of the bank. Lawrence on the same day (the 11th of October), drew a check on the bank for $5,291.67 (the amount due on the note); and the check was, "Pay James G. Kelly's note." On the same day, there was an entry made in the bank books, under the head of "Notes, When Paid," "Oct. 11, paid," against Kelly's note. Testimony was given by the cashier of the bank and by Lawrence, that these bills were discounted at the bank with an express agreement, that the note of Kelly should remain collateral security for the payment of the bills at maturity, in order to hold Hanrick upon his indorsement on the note. On the other hand, Kelly in his testimony expressly stated, that the bills were drawn, "according to his best knowledge and belief, for the purpose of renewing the note," and were negotiated at the bank; but he, Kelly, had no knowledge of the terms of the negotiation. The whole evidence upon this point also was left to the jury.

Rand & Fiske, for plaintiffs.
C. P. & B. R. Curtis, for defendant.

STORY, Circuit Justice, in summing up the case, said: I shall leave the evidence upon this point also for the consideration of the jury, as it seems to me very difficult to reconcile some of the admitted facts with some of the statements made by the cashier of the bank and Lawrence. It is clear, that Lawrence, in procuring these bills, acted as the agent of the bank, as well as for himself,

and that the bank must, therefore, be presumed to have had full notice of the purpose, for which the bills were made by Kelly and Hooker. If Lawrence applied them in his negotiation with the bank to any other purpose, than that for which they were originally made, and confided to him, he was guilty of a fraud upon Kelly and Hooker; and the bank, if cognizant of such original purpose, cannot be placed in a better predicament, than he would be as holder of the drafts. Now, it is for the jury to say, whether they entertain any doubt, that the bills were actually drawn and accepted by Kelly and Hooker, for the express purpose of being negotiated at the bank, by way of renewal of and to take up the dishonored note, and to procure a delay of payment of the debt, during the period that the bills were to run; and whether Lawrence and the bank did not, at the time of the negotiation and discount of the bills, fully know that such was the purpose; and if so, whether it was not agreed between the bank and Lawrence, that neither he, nor Kelly, nor Hooker, should be proceeded against upon the debt during the period that the bills were to run, and that the amount of the bills, deducting the discount, should be applied in extinguishment of the note, so far as they were concerned. If the jury are of opinion, that such was the real nature and character of the transaction, as understood by all the parties to the bills, at the time of the discount, then Hanrick is not liable upon the note; but the arrangement for such delay and prolongation of credit, being for a valuable consideration, discharged him as an accommodation indorser from all liability on the note. If the arrangement was not of this nature, it is difficult to perceive any motive, on the part of Kelly or Hooker, for drawing or accepting the bills, or of having them discounted at the bank, and paying a large sum for the rate of exchange, as well as for interest, since the proceeds never were otherwise applied to their use, or for the benefit of Lawrence, or Kelly, or Hooker; but remained in the bank until the maturity of the bills.

Verdict for the defendant.