Bartley, J.
Several questions are presented by the assignment of errors; but it will be sufficient to notice the following:
1. Were Brooks and Dellenbough,” competent witnesses for the plaintiff, on the trial in the court below ?
2. Did the court err, in the charge to the jury, as to the sufficiency of the notice of the dishonor of the bill?
The first question involves the constructio'n to be given to the third section of the statute of March, 1850, to improve *the law of evidence, which provides that “ no person offered as a witness shall be excluded by reason of his or her interest in the event of the action; but this section shall not apply to a party to the *181 action, nor to any party for whose immediate benefit such action is prosecuted or defended,” etc.
This statute, being remedial in its nature, is entitled to a liberal construction. The tendency of legislation has been of late to throw wide open the door for the admission of testimony, and, in the administration of justice, to repose rather upon objections to the credibility, than to the competency of witnesses.
A stockholder in a private corporation is interested in the event of any suit to which the company is a party. His interest is not immediate or direct, yet it is that legal interest which would render him incompetent as a witness on behalf of the corporation, without the provision of the statute above mentioned. The interest of a stockholder, in the absence of any special liability, is not increased by his becoming director. The directors of a corporation are simply agents in directing the management of its business, and this agency does not render their personal interest any more immediate or direct than that of other stockholders, when not coupled with a special individual liability of the directors for the debts of the corporation. So far, therefore, as the testimony of these witnesses was objectionable on the ground of interest, the objection went to their credibility, and not to their competency.
Were these witnesses, then, incompetent on the ground of being parties to the action, or parties for whose immediate benefit the action was prosecuted? A party to the action is a person whose name appears upon the record in the case, either as party plaintiff, or defendant. They were not, therefore, actual parties to the action ; but were they parties for whose’ immediate benefit the action was prosecuted ? The statutory exception of “ any party for whose immediate benefit such action is prosecuted or defended,” has an evident reference to that class of cases where the real party, not named upon the record, prosecutes or defends through the medium *of a mere nominal party in the action. The requisite qualification to bring a person within the exception is, that ho be not simply interested in the event of the suit, but the object of immediate consideration in the suit, or the real beneficiary for whom the suit is prosecuted or defended. To constitute this, the interest of such person in the suit must be direct and immediate, and not contingent, indirect, or remote. A stockholder, and the corporation •of which he is a member, are separate and distinct persons in law, and their interests are always distinct, and sometimes adverse. A *182 person may either sue, or be sued by a corporation of which he is a member. A judgment against the Bank of Salem would reach the property of the corporation, but could not bind the separate property of the stockholder, in his individual capacity. And a judgment in favor of the bank would not inure to the immediate benefit of any of the stockholders, but their interest in such judgment would be indirect and depend on contingencies. The immediate benefit contemplated by the statute to create the ineompetency, is an interest or advantage resulting to him personally, as the immediate and necessary consequence of the judgment itself, and not such as might reach him indirectly, through the medium of another person, and dependent upon a contingency.
The statute of Ohio above referred to is very similar to Lord Den-man’s act, 6 & 7 Yict. c. 85, so far as it relates to the interest' of witnesses and the incompetency of parties. And the language of the exception in the English act is “for whose immediate and individual benefit,” instead of “for whose immediate benefit ” the suit is-prosecuted or defended. Numerous decisions have been made in England, giving a construction to this act similar to that which we-have here given to the Ohio statute. In the case of Black v. Jones, 3 Eng. L. and Eq. 559, it was decided that a creditor for whose benefit an assignment has been made to a trustee by the debtor, is-a competent witness for the trustee in an action brought by him against an execution creditor of the debtor, who had levied upon the goods, when the very ^question was as to the validity of the deed. Also, in the case of Harding v. Hodgkinson, 4 Eng. L. & Eq. 462, it was held that a person entitled to a share in the proceeds of land devised to another, in trust for sale, is a competent witness in an action brought by the latter to establish his right to the land for the purpose aforesaid.
The court of exchequer in England is reported as saying that “ the test whether a witness is a person in whose immediate and individual behalf an action is brought or defended, either wholly or in part, is, whether his declarations would be admissible against the party on whose behalf he is called to give evidence.”
In the case before us a majority of the court hold that the court of common.pleas did not err in their ruling on the subject of the admissibility of the testimony in question.
Touching the second question, then, did the court of common pleas err in charging the jury, that, if the notice to the indorsers *183 of the demand and non-payment of the b'ill was deposited in the post-office at Pittsburgh, at any time during the day after the day of dishonor, without regard to the time of the departure of the mail for that day, it would be sufficient notice; and, moreover, that if it was found inconvenient to deposit the notice in the post-office in time for the mail of that day, it was in proper time -if the notice •faas deposited in time to be sent off by the next mail of the day next after tho day following the day of the dishonor of the bill?
This involves a very important question of the law merchant,, and it is not a little surprising t.hat there should remain any doubt or uncertainty, at this late day, upon a question of such vital importance to the interest of commercial countries respecting the duties and liabilities of holders and parties to dishonored paper. And it is a matter of no small moment, that a question which enters so largely as does this into the every-day business transactions of different commercial states and countries, should be settled, not only upon a certain and unvarying, but also upon a uniform basis.
*The liability of the indorser is strictly conditional—dependent both upon due demand of payment upon the maker or acceptor, and also due and legal notice of the non-payment. The purpose and object of such demand and notice is to enable the indorser to look to his own interest, and take immediate measures for his indemnity. The demand and notice being conditions precedent to the indorser’s liability, it is incumbent on the holder to make clear and satisfactory proof of them before he can recover. The plaintiffs in error in this case, being accommodation indorsers, may well insist upon strict proof of due diligence in giving notice of the dishonor of the bill.
The law does not require the utmost diligence in the holder in-giving notice to the dishonor of a bill or note. All that is requisite is ordinary or reasonable diligence. ' And this is not only the rule and requirement of the law merchant, but a statutory provision of this state. But what amounts to due diligence or reasonable notice is, when the facts are ascertained, purely a question of law, settled “ with a view to practical convenience and the usual course of business.”
The question was at one time strenuously contested, whether due diligence did not require that where the parties reside in the same place, the notice of non-payment should 'be given on the day of the *184 dishonor of the bill; and where the parties reside in different places, should be sent by the mail of that day, or the first possible or practicable mail after the default. Tindal v. Brown, 1 Term. 167; Darbishire v. Parker, 6 East. 3; Marius on Bills, 24. But the rule was established and is supported by great weight of authority, that where the parties reside in different places, and the post is the mode of conveyance adopted, although it was in no case necessary to send the notice by the post of the same day of the dishonor, or of the knowledge of the dishonor, the holder being entitled to the whole of that day, being the day of the dishonor or knowledge of the dishonor, to prepare his notice; yet that the notice would be insufficient unless put into the post-office in time to go by the next *mail after that day. And this is in conformity with the rule laid down by Mr. Chitty, in his learned treatise on bills of exchange, in the following explicit language : “ When the parties do not reside in the same place, and the notice is to be sent by general post, then the holder or party to give the notice must take care to forward notice by the post of the next day after the dishonor, or after he receives notice of such dishonor, whether that post sets off from the place where he is early or late; and if there be no post on such next day, then he must send off notice by the very next post that occurs after that day.” •Chitty on Bills, 485.
This is in accordance with the rule as settled by the supreme court of the United States. In Lenox v. Roberts, 2 Wheat. 373, Chief Justice Marshall says: “It is the opinion of the court that notice of the default of the maker should be put into the post-office early enough to be sent by the mail of the day succeeding the last day of grace.” And in the case of The Bank of Alexandria v. Swan, 9 Pet. 33, Mr. Justice Thompson approved of the general rule laid down in the case of Lenox v. Roberts, holding that notice of the dishonor need not be forwarded on the last day of grace, but should be sent by the mail of the next day after the dishonor. The same rule was adopted by Mr. Justice Washington, in the case of The United States v. Parker’s Adm’rs, 4 Wash. 465; and in which case subsequently that decision was affirmed on error by the supreme court (12 Wheat. 559). The same rule received the sanction of Mr. Justice Story, in the case of the Seventh Ward Bank v. Hanrick, 2 Story, 416. Although, in the case of Mitchell v. Degrand, 1 Mason, 180, he appears to have been disposed to even *185 greater strictness, holding that when a bill is once dishonored, the holder is bound to give notice by the next practicable mail to the parties whom he means to charge for the - default. This, however, is explained by Mr. Justice Washington, in the case of United States v. Parker’s Adm’rs, to mean that the notice should be put into the office in time to be sent by the mail of the succeeding day. This rule, adopted by *the supreme court of the United States, and which is supported by the great weight of authority in England and in the several states of the Union in which the question appears to have been settled by reported adjudications, is subject to some qualification relaxing its rigor. If two mails leave the same day on the route to the place of the residence of the indorser, it is sufficient to deposit the notice in the post office in time to go by either mail of that day, inasmuch as the fractions of the day are not counted. Whitewell v. Johnson, 17 Mass. 449, 454; Howard v. Ives, 1 Hill (N. Y.) 263.
And for the reason that the mail of the day succeeding the day of the default may go out in some places soon after midnight, or at a very early hour in the morning, and is sometimes made up and closed the evening preceding, it has been adjudged that inasmuch as the holder is allowed till the day after the day of default to send off the notice, reasonable diligence would not require him to deposit the notice in the post office at an unseasonably early hour, or before a reasonable time can be had for depositing the notice in the post office after early business hours of that day. The rule, as qualified and settled by the late authorities, and which I take to be the correct one, is, that where the parties reside in the same place or city, the notice may be given on the day of default; but if given at any time before the expiration of the day thereafter it will be sufficient ; and when the parties reside in different places or states the notice may be sent by the mail of the day of the default; but, if not, it must be deposited in the office in time for the mail of the next day, provided the mail of that day be not made up and closed at an unreasonably early hour. If, however, the mail of that day be closed before a reasonable time after early business hours, or if there be no mail sent out on that day, then it must be deposited in time for the next possible post. In the case of Downs v. Planters’ Bank, 1 S. & M., 261; and also the case of Chick v. Pillsbury, 24 M., 458, the doctrine on this subject has been more fully examined than perhaps in any of the older cases; and the rule «adopted *186 is, that the notice, in order to charge the indorser living in another place or state, must be deposited in the post office in time to be sent by the mail of the day succeeding the day of the dishonor, providing the mail of that day be not closed at an unreasonably early hour, or before early and convenient business hours. And this rule is well sustained by auth.ority. Fullerton et al. v. The Bank of the U. S., 1 Pet. 605, 618; Eagle Bank v. Chapin, 3 Pich. 180, 183; Talbot v. Clark, 8 Pick. 51; Carter v. Burly; 9 N. H. 559, 570; Farmers’ Bank of Maryland v. Duvall, 7 Gill and J., 79 ; Freeman’s Bank v. Perkins, 18 M., 292; Meade v. Engs, 5 Cow. 303 ; Sewall v. Russell, 3 Wend. 276 ; Brown v. Ferguson, 4 Leigh. 37 ; Dodge v. Bank of Kentucky, 2 Marsh. 610 ; Hickman v. Ryan, 5 Littell, 24; Hartford Bank v. Steedman, 3 Conn. 489; Brenger v. Wightman, 7 Watts and Serg. 264; Townsley v. Springer, 1 Lou. 122; Bank of Natchez v. King, 2 Rob. 243; Brown v. Turner, 1 Ala. 752; Lockwood v. Crawford, 18 Conn. 363; Bayley on Bills, 262; Story on Prom. Notes, sec. 325 ; and Byles on Bills, 160.
Some obscurity and uncertainty have been created on this subject by the expression used in some of the cases, and by some of the elementary writers, that the holder or person giving the notice has “one day” or “an entire day” in which to give the notice after the day of the dishonor. The term one day or an entire day seems not to have been used always in the same sense; and the confusion appears to have in part arisen from the fact that where the parties reside in the same place, notice at any time before the expiration of the day after the day of the default will be sufficient, while where the parties reside in different places, the notice must frequently be mailed early in the day to be in time for the mail of that day.
The defendant in error relies upon the doctrine laid down in the elementary works of Chancellor Kent and jVIr. Justice Story, as fully sustaining the charge of the court below. Inasmuch as precisión and certainty in the settlement of this *rule are of very great importance, a careful examination of the subject seems to be required.
Chancellor Kent, whose accuracy in his Commentaries on American Law is never to be questioned without grave consideration, in the late editions of his works, 3 Kent’s Com. 106, states the rule as follows : “ According to the modern doctrine, the notice must be given by the first direct and regular conveyance. This means the *187 first mail that goes after the day next to the third day of grace; so that if the third day of grace be on Thursday, and the drawer or indorser reside out of town, the notice may indeed be sent on Thursday, but must be put into the post-office or mailed on Friday, so as to be forwarded as soon as possible thereafter.”
And in a note by the learned author explanatory of the text it is said that “ the principle that ordinary, reasonable diligence is sufficient, and that the law does not regard the fractions of the day in sending notice, will sustain the rule as it is now generally and best understood in England; and in the commercial part of the United States, that notice put into the post-office on the next diay, at any time of the day, so as to be ready for the first mail that goes thereafter, is due notice, though it may not be mailed in season to go by the mail of the day next after the day of the default.”
Several cases are cited by the learned author, but they do not sustain his position. The case of Jackson v. Richards, 2 Caine’s Cas. 343, referred to is not in point. Haynes v. Birks, 3 Bos. & Pul. 601, decides that when the note fell due on Saturday, the notice sent by the post on Monday was sufficient. Sunday being excluded and not taken into the account, the notice was sent by the post of the next legal day. In the cases of Bray v. Hadwen, 5 Maule & S. 68, and Wright v. Shawcross, 2 Barn. & Ald. 501, it was decided that the notice having arrived on Sunday, was to be considered as having been received on Monday, and then the party had till Tuesday, the next post day, for giving the notice. In Gall v. Jeremy, 1 M. & M. 61, where no mail went out on the day next after the day of the default, it was held that the rule being an impossible one on that day, a notice sent by the next succeeding mail day would be in season. The case of Firth v. Thrush, 8 B. & C. 387, turned upon the question ^whether the attorney employed to ascertain the residence of the defendant, should be allowed a day to consult his client after information of the defendant’s residence. And Lord Tenterden said, “ if the letter (giving information of the defendant’s residence) had been sent to the principal, he would have been bound to give notice on the next day.” The only other case referred to is that of Hawkes v. Salter, 4 Bing. 715 ; and this is the only one which even tends to sustain the position of the learned author. In that case the bill was dishonored on Saturday, and the mail left at half-past nine o’clock on Monday morning ; and an unsuccessful attempt was made to prove that the notice was put into the post-office on *188 Tuesday morning. Best, C. J.,. expressed himself clearly of opinion “that it -would have been sufficient if the letter had been put into the post-office before the mail started on the Tuesday morning, but that there was no sufficient evidence that it had been put in even on Tuesday morning.” The opinion in this case was, therefore, a mere dictum, which determined nothing, the case being decided upon a different ground.
But the position of Chancellor Kent, above referred to, is in direct conflict with the rule, as laid down by himself in the first edition of his work. In the edition of 1828, 3 Kent’s Com. 73, the ■rule is stated in these words:
“ According to the modern doctrine the notice must be given by the first direct regular conveyance. This means the first convenient and practicable mail that goes on the day next to the third day of grace; so that if the third day of grace be on Thursday, and the drawer or-indorser reside out of town, the notice may indeed be sent on Thursday, but must be sent by the mail that goes •on Friday.” In the last edition of this work, published in 1851, the editor, Mr. William Kent, admits the weight of authority to be in favor of the rule as laid down in Chick v. Pillsbury, and Downs v. Planters’. Bank, above referred to; and he says that “ the opinion of Chief Justice Best, in 4 Bing. 715, is the only one that sustains the rule suggested, and that the observations of Mr. Justice Story were too latitudinarian in allowing the entire whole day next -after the dishonor.”
It is true that Mr. Justice Story, in his work on bills of exchange, sec. 291, says that an indorser need not give ^notice to his antecedent indorser till twenty-four hours have elapsed after the receipt of his own notice of the dishonor. And in his note to sec. 290 of the same work the author says that “ the rule does not appear to be so strict as it is laid down by Mr. Chitty, and that it would be more correct to 'say that the holder is entitled to one whole day to prepare his notice, and that, therefore, it will be sufficient if he sends it by the next post that goes after twenty-four hours from the time of the dishonor, etc. And he adds: “ I have seen no late case which imports a different doctrine; on the contrary, they appear to me to sustain it; but, as I do not know of any direct authority which positively so decides, this remark is merely propounded for the consideration of the learned reader.”
*189 It is not necessary here to inquire whether the position taken by the-learned author is in conflict with the decisions made by himself in 1 Mason, 180, and 2 Story, 416, above referred to. In his same work on bills of exchange, he has stated the rule with great precision and accuracy in the following language, in see. 382: “ In all cases where notice is required to be given, it is sufficient, if the notice is personal, that it is given on the day succeeding the day of the dishonor, early enough for the party to receive it on that day. If sent by the mail, it is sufficient if it is sent by the mail of the next day, or the next practicable mail.” And in see. 288 : “ If the post or mail leaves the next day after the dishonor, the notice should be sent by that post or mail, if the time of its closing or departure is not at too early an hour to disable the holder from a reasonable performance of the duty. So that the rule may be fairly stated in more general terms to be, that the notice is in all cases to be sent by the next practical post or mail after the üay of the dishonor, having a due reference to all the circumstances of the case.”
The same learned author has laid down the rule very fully to the same effect in his work on promissory notes, sec. 324.
The statement of the rule in the last extract is consistent with the doctrine established by the supreme court of the United States, and fully sustained by authority.
The discrepancies which have arisen on this subject appear to have grown out of an inaccurate use in some of the *books and decisions of the terms “his day” “an entire day,” and “a whole day,” etc. These phrases being at one time understood or taken literally, and at- another time to mean a space of time equal to a full day. If these phrases are to be taken to mean the duration of a full day instead of the day itself, in their general application, the effect would be to change and break down numerous well-settled and useful rules. The law, as a general .thing, does not have regard to the fractions of a day, and thus compel parties to resort to nice questions of the sufficiency of a certain number of hours or minutes, and to the taking of the parts of two different days to make up what may be considered in one sense a day, because equal in duration to one entire day. If this were -the case, the indorser, after having been notified, would often be unable to determine whether he had been notified in season or not, until he had learned the hour of the day when the default occurred; and the holder would have it in his power at times of affecting injuri *190 ously the right of the indorser to an early notice, by delaying the presentment until a late hour in the day. Nothing more could have been intended by the use of these phrases than that each party should have a specified day upon which the act enjoined upon him should be performed. This is the sense in which Lord Ellenborough used it in the case of Smith v. Mullett, 2 Camp. 208, when he said: “If a party has an entire day, he must send off his letter conveying the notice within post time of that day.” And it is said by a learned elementary author, “ if a party has an entire day he must send off his letter conveying the notice of the dishonor of the bill within post time of that day.” Byles on Bills, 161.
The rule laid down in Smith’s Mercantile Law, to which the defendant in error has referred, will not, as I apprehend, be found on close examination to be at variance with the doctrine here adopted. Smith’s Mer. Law, 310.
It is claimed on behalf of the plaintiffs in error in this case that the notice of the dishonor of the bill should have been sent immediately to them instead of being sent as it was in *the first
place to the bank of Salem. The holder is not bound to give notice of the dishonor to any more than his immediate indorser. And each party to a bill has the same time after notice to himself for giving notice to other parties beyond him, that was allowed to the holder after the default. Sheldon v. Benham, 4 Hill (N. Y.) 129; Eagle Bank v. Hathaway, 5 Met. 213. And when a bill is sent to an agent for collection, the agent is required simply to give notice of the dishonor in due time to his principal; and the principal then has the same time for giving notice to the indorsers after such no • tice from his agent as if he had been himself an indorser receiving notice from a holder. Bank of the U. S. v. Davis, 2 Hill (N. Y.) 452; Church v. Barlow, 9 Pick. 547. The party in this case, therefore, was not at fault by sending the notice directly to the Bank of Salem, leavingthat bank to send the notice to the plaintiffs in error.
Applying the rule, therefore, which we have adopted as the correct one to this case, it was incumbent on the plaintiff below, in order to be entitled to a recovery, to show that the notice of the dishonor of the bill was deposited in the post office in Pittsburgh in time to be sent by the mail of the 28th day of July. Ten minutes past nine o’clock in the morning was not an unreasonably early hour or before a reasonable and convenient time after the commencement of early business hours of the day. The neglect, *191 therefore, to send the notice by the .mail of the next day after the day of the default, operated to discharge the plaintiffs in error as indorsers, unless from some other cause notice had been dispensed with or rendered unnecessary. And for the charge of the court of common pleas to the jury to the contrary, the judgment is reversed and the cause remanded for further proceedings.
Corwin, J., dissented from the opinion of the majority of the court on the first point.

Judgment of common pleas reversed.