Mead
v.
Engs.

MEAD and ROGERS *against* ENGS.

ASSUMPSIT, on an inland bill of exchange, by the plaintiffs, as endorsees, against the defendant, as drawer, tried at the New York circuit, January 18th, 1825, before EDWARDS C. Judge. The bill was dated at New York, June 17th, 1823, and drawn on one Bourne, Bristol, Rhode Island, for $400, at four months, by the defendant, payable to his own order ; and by him endorsed to the plaintiffs. It was duly accepted and left at the Freeman's Bank, Bristol, for collection. The bill was due October 20th, 1823 ; payment demanded on that day by a notary, who protested it for non-payment ; and returned it to Richmond, the cashier of the bank. Richmond sent the bill and protest by the next mail (October 21st, at 2 P. M.) to Smith, cashier of the Roger Williams Bank, Providence, from whom he had received it for collection ; and where the mail arrived at 5 P. M. of the same day. Smith received the bill and protest, October 22d, (Wednesday,) and forwarded them by the first mail after so receiving them, to Flewelling, at New York, the immediate endorser of the R. W. Bank. Flewelling received them October 25th, in the morning, enclosed in Smith's letter, which was post marked at Providence, October 23d. In 1823, a mail left Providence for New York, by the way of

*Notice of non-payment of a bill of exchange, &c. must generally be given by an endorser to the endorser next before him, by the next post after he himself has received notice of the dishonor ; and so on to the drawer. But this rule is not inflexible. It means the next convenient and practicable post ; and one dealing in bills or notes, is not bound to watch the post office constantly, for the purpose of receiving and transmitting notices. Reasonable diligence and attention is all that the law exacts.*

*Accordingly, where R. residing at Bristol, Rhode Island, October 21st, sent notice of non-payment of an inland bill, to S. his immediate endorser at Providence, by the post which reached there on the same day, at 5 P. M. ; and S. received the notice on the morning of the 22d, and put a notice in the post office, in the afternoon of the same day, for his endorser at New York, although a mail had previously left Providence, at 1 P. M. of the same day for New York ; and this letter was post marked the 23d, and was taken by the post of that day in the morning, and reached the endorser at New York, in the due course of the mail ; there being no laches imputed after this ; held, that the drawer was not discharged.*

*One to whom a bill or note is endorsed merely as agent to collect, (e. g. a bank,) is a holder for the purpose of giving and receiving notice of non-payment ; and he is not bound to give notice of non-payment directly to all prior parties ; but may notice his next immediate endorser, who is bound to notice his endorser, &c. in the same manner as if the bill or note had been negotiated for a valuable consideration.*

*If an endorser receive notice from any one who is a party, he is liable to any subsequent endorser, though he may have received no notice from him. Per Sutherland, J.*

Hartford, on Tuesday, Thursday and Saturday mornings about 8 o'clock ; and arrived at New York, in about 48 hours. , Another mail left Providence for New York, by way of Saybrook, on Monday, Wednesday and Friday, at 1 P. M. ; and arrived at New York, in about 36 hours ; and, of course, Smith did not deliver his letter at the post office in Providence, early enough on Wednesday, for the mail which left there at 1 P. M.

These facts appearing at the trial, the defendant offered evidence that it was the custom of New York banks, which received bills or notes for collection, to give notice of payment directly to all prior parties ; but the evidence was excluded.

The defendant's counsel objected, among other things that Smith was guilty of laches ; 1st, in not obtaining the letter of Richmond, on Tuesday the 21st ; and 2dly, in not forwarding the bill and protest to Flewelling by the Wednesday's mail, (22d ;) and 3dly, that the notary at Bristol should have given direct notice to all the parties entitled to receive it.

The judge left it to the jury, whether Smith had sent the bill and protest to New York by the next mail after he received them ; and charged that it was not necessary for Smith to give direct notice to all parties, as contended by the defendant's counsel.  Under this charge, the jury found for the plaintiff, for $457 34 damages.

*H. Ketchum,* now moved for a new trial ; 1. Because the judge improperly overruled the evidence offered of the custom of banks in the city of New York, to give notice of non-payment to all the prior parties interested, on bills or notes left with them for collection.  (*Renner* v. *Bank of Columbia,* 9 Wheat. Rep. 581.)

2. The charge of the judge was against law.  (*Morgan* v. *Woodworth,* 3 John. Cas. 89.  *Morgan* v. *Van Ingen,* 2 John. Rep. 204.)

3. On the ground of laches ; and that the judge should have charged the jury, that it was Smith's duty, in the exer-

cise of ordinary diligence, to have received the bill and protest on the evening of the 21st, or the opening of the post office on the morning of the 22d of October.

4. That the verdict was against evidence.

As to the 2d point, he said diligence was a question of law; (*Smedes* v. *Bank of Utica*, 20 John. 382; *Bank of Utica* v. *Smith*, 18 id. 230;) and should not, therefore, have been left to the jury.

We admit that English bankers receiving notes or bills for collection, may give notice in the same manner as if they were endorsed to them for a valuable consideration; but the rule has never been adopted with us; and indeed is virtually overruled by *Smedes* v. *Bank of Utica* and *Bank of Utica* v. *Smith.*

*B. F. Butler*, contra, said the only serious question in the case is, whether the notary was bound to give direct notice to all concerned; or whether it might be given circuitously through the endorsers to each in his turn. This case is not an exception to a bill transferred in the ordinary course of business; as to which, it is admitted, an indirect notice would be good; and that the notice here given would be sufficient, the authorities are abundant. (Chit. on Bills, Phil. ed. 291, 295, 401, 407. *Haynes* v. *Birks*, 3 B. & P. 399. *Langdale* v. *Trimmer*, 15 East, 291. *Jameson* v. *Swinton*, 2 Campb. 373. *Rickford* v. *Ridge*, id. 537, 539, per Ld. Ellenborough. *Robson* v. *Bennett*, 2 Taunt. 387. *Colt* v. *Noble*, 5 Mass. Rep. 167. *Tunno* v. *Lague*, 2 John. Cas. 1. *Morgan* v. *Van Ingen*, 2 John. Rep. 204. *Darbyshire* v. *Parker*, 6 East, 3.)

The judge was right in referring the question of diligence to the jury. (*Chapman* v. *Lipscomb*, 1 John. Rep. 294.)

*Curia*, per SUTHERLAND, J. No laches are imputed after the bill and protest reached Flewelling. The law does not require the holder of a bill or note to give the earliest possible notice of its dishonor. It requires of him only an ordinary and reasonable diligence. (*Bank of Utica* v. *Smith*, 18 ohn. 240, per Spencer, J. 3 B. & P. 602.) Nor is he bound

the moment he receives notice of the dishonor of a bill to lay aside all other business, and dispatch notice to the prior parties to the bill. If reasonable diligence is used it is sui ficient. (*Scott* v. *Lifford*, 9 East, 347. 1 Camp. 246, S. C.) Lord Ellenborough, in *Darbyshire* v. *Parker*, (6 East, 9,) observes, there must be some reasonable time allowed, for giving notice, and that, too, accommodating itself to other business and affairs of life. Otherwise, it is saying that a man who has bill transactions passing through his hands, must be nailed to the post-office, and can attend to no other business, however urgent, till this is dispatched.

I do not think the cashier at Providence is chargeable with laches, in not having received the bill and protest from Bristol, until the morning of the 22d. It did not arrive until after 5 o'clock on the preceding day, when with commercial men generally, and especially with banks, the business of the day is considered as closed. In our large commercial towns there is scarcely an hour in the day, in which mails are not received; and if it is the duty of all those who have any interest in bills or notes, to omit no act by which they may receive the earliest possible intelligence in relation to them, then, as Lord Ellenborough observes, they must be in constant attendance at the post-office. So rigid a rule is not required by considerations of commercial policy; and there is no authority in favor of it. Reasonable diligence and attention are all that the law exacts.

Nor do I think the cashier at Providence was bound to forward the bill and protest by the mail which left there at one o'clock of the day on which he received the letter. At what hour they were received by him does not appear; and he states very positively in his deposition, that they were forwarded by the first mail after they were received; that he is well acquainted with the course of the mails between Providence and New-York; and that the bill was sent with as much expedition as the course of the mails would permit. But from this letter bearing the Providence post mark of the 23d, it is fairly to be presumed that it was not put in the post-office in season for the mail which left there at 1 o'clock P. M. on the 22d. Either the witness who swears that there

was such a mail, must be mistaken, in that fact, or the cashier must have fallen into an error; or he did not receive the letter from Bristol until after one o'clock. The latter supposition is very improbable. I think the cause must be decided upon the assumption that he received the bill on the morning of the 22d, and forwarded it to New-York by putting it into the post-office in the afternoon of the same day, a mail having, in the mean time, left there at one o'clock.

It is well established in England, that where the parties to a bill or note reside in London, or in an adjacent village within the limits of the two-penny post, each party has an entire day after that on which he was informed of the dishonor, to give notice to the immediate indorsers; and Mr. Chitty seems to consider it in all cases sufficient, whether the parties reside in London or elsewhere, if each forward notice on the day after that on which he received information of the dishonor. (Chitty on Bills, 408, Phil. ed.) But I think he is not supported by the authorities on which he relies, in this general position.

The general rule, I apprehend, is more correctly stated by Mr. Justice Lawrence, in *Darbyshire* v. *Parker*, (6 East, 10.) This is, that where the parties live in different places, notice shall be sent by the next post. But if, in any particular place, the post should go out so early after the receipt of the intelligence as that it would be inconvenient to require a strict adherence to the general rule, then, in such case, it would not be reasonable to require the notice to be sent till the second post. Lord Ellenborough, however, in the same case, (page 9,) seems to consider the question unsettled, whether a party is in any case bound to communicate by the next post the intelligence he had received by the post on the same day, although there was a reasonable time between the coming in and going out of the post on the same day. Grose, J. observes, " when it is said in the books that notice must be sent by the next post to a party living at another place, that cannot be taken literally in all cases, but must mean the next convenient, the next practicable post. It cannot be meant to apply to a case where the post goes out the next minute after advice received."

ALBANY,
Feb. 1826.

M ʾɛ.i
v.
Engs.

I conceive the general rule to be, therefore, that notice must be sent by the next post after intelligence of the dishonor of a bill is received. But this rule is undoubtedly subject to the qualifications stated by Justices Lawrence and Grose. (And vid. 20 John. 382.)

The facts in this case bring it within the exception to the rule. The cashier was not bound, in the exercise of due diligence, to have prepared and forwarded notice by the one o'clock mail. It is not reasonable to demand from him the neglect of his other official duties, to prepare his letters and notices during the usual banking hours.

Although the Providence and Bristol banks had no interest in the bill, and were mere agents to collect it; yet, for the purpose of receiving and transmitting notices, &c., they are to be considered the real holders. This is perfectly settled in England; and, I believe, is according to the established usage in this country. (*Haynes* v. *Birks*, 3 B. & P. 599. *Robson* v. *Bennett*, 2 Taunt. 38. *Langdale* v. *Trimmer*, 15 East, 291. Chit. on Bills, 405, Phil. ed. *Scott* v. *Lifford*, 9 East, 347. 1 Camp. 349, S. C.

This precise question was settled in Massachusetts, in the case of *Colt* v. *Noble*, (5 Mass. Rep. 167.) The plaintiff, in that case, purchased from the defendant a master of an American ship, then at Madras, and bound to Portsmouth in New-Hampshire, which was the place of his residence, a bill drawn by W. Cox, in favor of the defendant, on Cox and Greenwood, in London. The defendant endorsed the bill to the plaintiffs. They sent it to their agents in London, to obtain payment from the drawers. The bill was protested for non-payment; and the agents returned it to the plaintiffs at Madras, but gave no notice of its dishonor to the defendant in America. The plaintiffs, however, in a reasonable time after they received the bill from their agent, sent notice of its dishonor to the defendant. And the defence was, that the defendant should have had notice of the dishonor of the bill direct from London, and not by the way of Madras. Ch. J. Parsons delivered the opinion of the court, by which the notice was held good.

ALBANY,
Feb. 1826.

If the drawer or endorser of a bill of exchange receive due notice of its dishonour from any person who is a party to it, he is directly liable upon it to any subsequent endorser, although he may have received no notice of its dishonour from him. (2 Campb. 373, 208. Chitty on Bills, 401, and seq. id. 291, 295, &c. 18 John. 239. 3 John. Cas. 90. 2 John. 204.)

The evidence of custom, which was rejected by the judge was in no respect material. It is prudent, and probably customary for the holders of bills of exchange to give notice of their dishonour to all the parties to. the bill. They may not wish to run the hazard of some of the parties being discharged, by the omission of such notice. But if the holder is satisfied with the responsibility of his immediate endorser there is no necessity for his giving notice to any previous party; and if such notice is given by the other parties to the bill, the holder may recover against any of them.

Motion for a new trial denied.