## BEALE *et al. v.* PARRISH.

Though notice of non-payment, given by the holder of a note to an indorser, enures to the benefit of the other parties to the paper, an inability to learn the proper place for giving such notice which excuses the holder is not available to another indorser who possesses the necessary information.

Beale *v.* Parrish.

Such ignorance excuses the giving notice only so long as it continues; the duty arises when the ability to discharge it is acquired, and any negligence thereafter has the same consequences as inexcusable neglect in the first instance.

The plaintiffs, indorsers of a note, and chargeable with knowledge of the residence of a prior indorser, gave erroneous information to the holder, a bank, to which they had indorsed it, whereby the prior indorser failed to receive notice of non-payment. They then took up the note, and brought their action against the prior indorser without any further notice: *Held*, that though the bank might have recovered, the plaintiffs did not stand upon its footing, and that the indorser as against them was discharged.

APPEAL from the Supreme Court. Action to recover the amount of a promissory note made by Parrish & Utley, dated Sept. 20th, 1853, for $500, payable at the American Exchange Bank, New York, six months after date, to the order of the makers, and indorsed by them and the appellant. The complaint alleged that the note was duly presented for payment, and payment refused, and that the defendants were duly noti fied thereof. The appellant, by his answer, denied the service of notice upon him. The cause was tried at the New York Circuit, without a jury. It appeared upon the trial, that the makers of the note, at its date, resided at Dunkirk, and were doing business there as partners. The plaintiffs resided in New York, engaged in business there as partners. The appellant resided, and had resided for a number of years in Canandaigua. The makers of the note became indebted to the plaintiffs, made the note in suit, obtained the indorsement of the defendant and remitted the same to the plaintiffs, to apply on their debt to them. The plaintiffs, before the note became due, got it discounted by the Chemical Bank, in New York, and indorsed the same to the bank. The bank, when the note became due, placed the same in the hands of a notary, for the purpose of demanding payment and giving notice to the indorsers. The notary demanded payment at the place where the note was payable, and payment was refused. He then protested the note, and upon the next day made inquiries at the Chemical Bank as to where the appellant resided, and where notice was

to be served on him. The officers of the bank answered that they did not know. On the same day he served notice upon the plaintiffs, by delivering the same to Melick, one of their firm, and asked him where he should serve notice on the appellant. Melick answered that his residence was either Dunkirk or Buffalo, he did not know which, and wished a notice sent to him at both places, to make a sure thing of it. The notary directed notice to him at both places, and deposited them in the post-office. It further appeared that the note, when sent to the plaintiffs, was inclosed in a letter to them, written by the makers, in which it was stated that the appellant resided at Canandaigua; and also, that one of the plaintiffs, Mr. Beale, was informed before the note became due, by one of the makers, that the appellant resided at Canandaigua. The plaintiffs paid the amount of the note, and took it from the Chemical Bank before the commencement of the suit. Judgment was given for the plaintiffs, against the appellant, for the amount of the note, which was affirmed at general term upon appeal, and the defendant appealed to this court.

*James C. Smith*, for the appellant.

*John C. T. Smidt*, for the respondent.

GROVER, J. The first question necessary to be considered in this case is, whether due diligence was used by the notary employed by the Chemical Bank, to ascertain the residence of the defendant, so as to excuse the service of notice upon him as required by law, in favor of the bank, the holder of the note. He inquired at the bank, and ascertained that the officers did not know where he resided, or where notice should be served upon him. He then inquired of Melick, one of the plaintiffs, and one of the immediate indorsers to the bank, and was informed by him that the defendant resided either at Dunkirk or Buffalo, and requested that notice might be directed to him at both places, so as to make a sure thing of it. The notary accordingly deposited the proper notices to the

defendant in the post-office, at New York, addressed to him at each of those places. I think that was sufficient to enable the bank to recover against the defendant, although his actual residence was at Canandaigua. (*Ransom* v. *Mack*, 2 *Hill*, 588.) In this case it was held, that where inquiry was made of the second indorser, as to the residence of the first, and he assumed to know his residence, and informed the notary thereof, who served the notice accordingly, that this was sufficient to charge him, although he resided at a different place. The only differ_ence between that case and the one before the court is, that in this case the indorser informed the notary that the defendant resided in one of two places. He assumed to be certain to this extent, and the notary addressed a notice to the defendant at both the places named, rendering it equally certain to reach him as though but one place had been named, and notice had been directed there. In the *Bank of Utica* v. *Bender* (21 *Wend.*, 643), it was held, that a notice sent by mail, to the place designated as the residence of the indorser of a bill of exchange by the drawer, for whose accommodation the bill was indorsed, and for whose benefit it was discounted, was sufficient to charge the indorser, although his residence was at a different place. (*See also Catskill Bank* v. *Stall*, 15 *Wend.*, 364.) These cases proceed upon the principle that a party through whose hands negotiable paper has passed, is presumed to know the residence of the party from whom he received it and the prior parties. They are, therefore, proper sources to which to apply for information, and when applied to and assuming to know, information given by them may with safety be acted upon.

In this case, the plaintiffs were duly charged as indorsers to the bank. They were liable as such to pay the note. Having paid and taken the note from the bank, they are presumed to have paid it in discharge of that liability. They then became the holders of the note, invested with the right to resort to prior parties for payment, provided such parties had been duly charged by the service of the requisite notice. A notice given by the holder will enure to the benefit of the other parties to the bill or note. (*Stafford* v. *Yates*, 18 *Johns.*, 327; *Mead* v.

*Engs*, 5 *Cow.*, 303.)   This is upon the ground that the object of the notice is to enable the party entitled to notice to take the necessary steps to protect himself from loss, and where notice is actually served by any party to the paper, as required by law, this object is accomplished.   Not so, however, where the notice is not so served, but the service is excused upon the ground of inability to ascertain the proper place for service, after using due diligence to learn it.   In such case the indorser is holden, although deprived of what the law deems an essential benefit to him.   Inability to discover the residence of the indorser, excuses the proper service, only so long as such inability continues.   When the residence becomes known to the party wishing to hold the indorser, it is his duty then to be diligent in making service. (*Chitty on Bills*, 493.)   Had the bank continued to hold the note in suit, knowing that the only notice of dishonor to the defendant had been directed to Dunkirk and Buffalo, and had it at any time learned that he resided at Canandaigua, it would then have been necessary for it to have served notice there, in the same manner as though his real residence had been known to the bank when the note became due.   The excuse for not serving notice would have ceased, and it could no longer be held that due diligence had been used, unless service was made.   The law will go no further than necessity requires.   The same rule would be applicable to a purchaser from the bank.   If this be so, the plaintiffs cannot recover.   The case shows, that some of them knew the residence of the defendant.   That information was contained in the letter inclosing the note to the plaintiff, and was also given to Mr. Beale, one of the plaintiffs, verbally, by Stephen Parrish.   The plaintiffs might at once have given the proper notice.   One of the plaintiffs (Melick) knew that no notice for the defendant had been directed to Canandaigua. They could at once have served notice.   This they neglected to do, and the defendant was thereby discharged.

If I am wrong in the above conclusion — if the rule is, that the holder having once used due diligence to learn the residence of the indorser, and having, as he supposes, ascertained it, and

served notice accordingly, is not obliged to do anything further, although he may afterwards learn that his information was erroneous, and learn the true residence — it remains to inquire whether the plaintiffs can avail themselves of this right of the bank. As above remarked, they paid the note to the bank in discharge of their liability as indorsers, not as sureties for the defendant. The doctrine of subrogation, in favor of a surety, does not attach. Their suit is based upon the defendant's indorsement to them. To recover, it was necessary to show notice of dishonor served upon the defendant by some party to the note, or that there was a legal excuse for the omission. Such excuse was shown so far as the bank was concerned, but none whatever as to the plaintiffs. They could have at once served the proper notice upon the defendant, upon receipt of notice by them from the bank. While it is settled that notice by the holder to the defendant would have enured to the benefit of the other indorsers, there is no authority holding that an excuse for the omission to serve by the holders shall extend to other parties for whom there is no such excuse. Upon both the above grounds, I think the judgment should be reversed, and a new trial ordered.

JOHNSON, Ch. J., expressed no opinion; all the other judges concurring,

Judgment reversed, and new trial ordered.