There is but a single question attempted to be raised in the case, viz.: whether reasonable diligence was used in notifying the defendant of the non-payment of the note. I have intentionally used the expression, attempted to be raised, for it is to be doubted, as the case and exceptions are presented, whether the question of diligence can or should be considered. The question is one of law, when there is no dispute as to the facts. There was no dispute in this case, but instead of presenting the question to the referee, on a motion for a *Page 487 
nonsuit, or in some other way, it seems not to have been distinctly or definitely raised. After evidence had been given by the plaintiffs, tending to show a demand, protest and notice of non-payment, the note was offered in evidence, the defendant objecting on the ground that the proper proof of demand and notice of protest had not been made. The referee did not then pass upon the objection, but subsequently, and after evidence had been given as to demand and protest, the note and certificate of protest was received in evidence, the defendant's counsel only interposing a general objection. There was no objection that the note ought not to be read in evidence, on the ground of want of diligence in giving notice of dishonor to the indorser, nor was the referee requested, in any stage of the trial, to pass upon that question as one of law. He has decided it as one of fact against the defendant.
But if the question of diligence is open, and to be considered as one of law, I see no difficulty in sustaining the judgment of the referee. When the note fell due it was in the Broadway Bank, the place where payment was to be demanded. It is to be inferred that it was indorsed, by the plaintiffs, to the Broadway Bank for collection; the latter bank was certainly their agent for that purpose. The Broadway Bank employed their notary to demand payment and, in the event of refusal, to protest the note and give notice of its dishonor. The plaintiffs are to be regarded as a party to the paper, for all the purposes of receiving and giving notice to charge the prior parties. (Edwards on Bills, 622; Bank of the United States v. Davis, 2 Hill, 451; Clode
v. Bayley, 12 Meeson Welsb., 51.) The note was protested, after banking hours, on the 27th of January, which was Saturday. The notary had, until the next day, that is, the next business
day, which was Monday, the 29th, to give notice of non-payment. When the third day of grace falls on Saturday, the notice of non-payment need not be given until the next Monday. (Williams
v. Matthews, 3 Cow., 252.)
The defendant appears to me to have been regularly notified. Due diligence, within legal rules, was used. *Page 488 
When an indorser intends charging previous indorsers by consecutive notices, and they reside in different places, due diligence will have been used when notice is sent the day following that on which it is received. The rule is the same though the paper is indorsed from one to another agent for collection merely. Each of such indorsers is to be regarded as a party for all the purposes of charging prior parties. In Scott
v. Lifford (9 East., 347), the plaintiff, having become the holder of a bill of exchange, had placed it in the hands of his bankers. On the 4th June, when the bill became due, a clerk of the bankers presented it for payment, and it was dishonored. On the 5th they returned it to the plaintiff, who by letter put into the two-penny post on the 6th, gave notice to the defendant (the drawer), of the dishonor; the plaintiff living in London, and the defendant at Shadwell. It was held that reasonable diligence had been used.
But, even if the principle of charging prior parties by consecutive notices, from one to the other, did not apply, and the plaintiffs are to be regarded as the holders of the note, and not the Broadway Bank, when it became due, and the notary, as the agent of the plaintiff, and not of the latter bank, in giving notice of the dishonor, I think there was no want of reasonable diligence. The note purported to have been made at New York, and was payable at a bank in that city. The notary was ignorant of the place of residence of the defendant, and the latter had not left any notice or memoranda with any one to indicate it. The referee finds that the notary made inquiries for the defendant's place of residence, but was not able to ascertain where it was; whereupon he deposited in the postoffice, at New York, a notice directed to him at New York, and mailed another notice, directed to him under an inclosure to the cashier of the plaintiff's bank at Bridgeport. This amounted to due diligence, unless we are to assume that the plaintiffs well knew where the defendant resided when the paper was about to mature, and, in anticipation of default in payment, by the maker, on presentation, were bound to communicate *Page 489 
such knowledge to their collecting agent or the notary in New York.
I am of the opinion that the judgment of the Supreme Court should be affirmed.