THE WEST RIVER BANK, Respondent, *v.* JAMES B. TAYLOR, impleaded, &c., Appellant.

The whole duty of the holder of a protested bill is discharged by notice to his immediate indorser; and all parties to the bill or note will be charged, if they receive notice in due course from their immediate subsequent indorsers.

When the collecting agent of the holder resides in the same city with one of the indorsers of the bill, it does not modify the rule as above stated.

*E. W. Stoughton*, for the appellant.

*A. R. Dyett*, for the respondent.

DAVIES, J. The facts found by the referee who tried this action, material to the question presented for decision, are, that the bill of exchange set out in the complaint, and upon which the action is brought, was accepted by the drawee in the city of New York, and there indorsed by the defendant Taylor, without consideration, and for the accommodation of the drawer thereof; that said bill was dated at Windsor, Vermont, and, after the same was so accepted by the defendant St. John, and indorsed by the defendant Taylor, was, soon after such indorsement and acceptance, and before the same became due, delivered by the drawer thereof to the plaintiff, a corporation created by the laws of the State of Vermont, and doing business at Jamaica, in said State; that it was delivered to the plaintiff, at Jamaica, for a valuable consideration, and that the plaintiff then became, and ever since had been, the owner of said bill; that before said bill became due and payable, the plaintiff indorsed and delivered the same for collection to the Eliot Bank, situated and doing business in Boston, in the State of Massachusetts, and the said Eliot Bank indorsed and delivered said bill to the Nassau Bank, situated and doing business in the city and State of New York, also for collection; that, at the time of said acceptance and indorsement of said bill of exchange, and also when the same became due and payable, and before and afterwards, both the defendants, St. John and Taylor, resided and kept

and had their respective places of business in the city of New York, and the plaintiff had notice thereof; that said bill became due on the 25th day of December, 1856, and that said day, by the laws of the State of New York, was, for all purposes of protesting and giving notice of the dishonor of bills of exchange, treated and considered as the first day of the week, called Sunday; that, on the 24th day of December, in said year, when the said bill became due and payable, it was presented by the notary of the Nassau Bank, then the holder thereof, for collection, at the office or place of business of said St. John, in the city of New York, in his absence from said office, and payment thereof was then and there demanded, which was refused, and said bill was thereupon protested by said notary for non-payment; that notices of such presentment and demand and refusal of payment of said bill and of the protest thereof, for the Eliot Bank, and for the plaintiff and for the defendant Taylor, were by the said notary sent by mail on the 26th of December, 1856, from said city of New York to said Eliot Bank, and were by said Eliot Bank received at said city of Boston on the 27th of said December; that said notices for the plaintiff and said defendant Taylor were by said Eliot Bank sent by mail on said 27th of December, from said city of Boston, to said plaintiff, at said town of Jamaica, in Vermont, and were by said plaintiff received on or about the 29th of said December; that the plaintiff, by its cashier, inclosed said notice for the defendant Taylor in a sealed envelope, addressed to said defendant Taylor, at the city of New York, and deposited the same in the post-office in the said town of Jamaica, and paid the postage thereon, before the departure of the next mail for said city of New York after such notice was received by the plaintiff. Judgment on referee's report for the amount of the note and interest; and the same was affirmed at the General Term of the Superior Court of New York. The defendant Taylor now appeals to this court.

Upon the facts found by the referee, but a single question is presented for the consideration of this court, and that is, whether the defendant Taylor has been legally charged as the

indorser of the draft or bill in controversy. The solution of this inquiry depends upon the fact, whether it was the duty of the Nassau Bank to have given the notice of protest personally to the defendant Taylor in the city of New York, or whether he has been duly charged as indorser by the transmission of the notices by that bank to its immediate preceding indorser, the Eliot Bank, and so from indorser to indorser until it reached the defendant. Where the party giving the notice, and the party to whom it is his duty to give it, that he may be charged on the bill or note, so that he may hold him thereon, reside in the same place, city, town or village, the service must be personal, or by leaving the notice at the dwelling house or place of business of the party sought to be charged, and a service through the post-office is not sufficient. (*Remmer* v. *Mack*, 2 Hill, 587, and cases there cited; *Sheldon* v. *Benham*, 4 id., 129.)

In the present case, the Eliot Bank and the Nassau Bank had no interest in the bill. They were the agents of the plaintiff, the owner of the bill, to collect it; yet, for the purpose of receiving and transmitting notices, &c., and charging the parties thereon, they are to be considered the real holders. This is perfectly well settled in England. (*Haynes* v. *Birks*, 3 B. & P., 599; *Robson* v. *Bennett*, 2 Taunt., 388; *Langdale* v. *Trimmer*, 15 East, 291; *Scott* v. *Lifford*, 9 id., 347; *S. C.*, 1 Campb., 246; Chitty on Bills, 9th Am. ed., 519.) It is also well settled in this country and in this State. (*Mead* v. *Engs*, 5 Cow., 303; *Colt* v. *Noble*, 5 Mass., 167; *The Farmers' Bank of Bridgeport* v. *Vail*, 21 N. Y., 485.)

It is also settled that if the drawer or indorser of a bill of exchange receives due notice of its dishonor from any person who is a party to it, he is directly liable upon it to any subsequent indorser, although he may have received no notice of its dishonor from him. (*Mead* v. *Engs*, *supra*, 2 Campb., 208, 373; Chitty on Bills, 523.)

And a notice from the holder to all the parties inures to the benefit of each party who stands behind him on the paper. Thus, if the holder gives due notice to the first and second indorsers of a promissory note, the second is entitled

to recover thereon from the first indorser, on showing that such notice of dishonor was duly given; so if the holder gives notice to his immediate indorser, and the notice is in this manner carried back to the drawer of the bill, the holder is entitled to bring an action thereon against either of the parties that have been duly notified. (Edw. on Bills, 626, 627.) Another well settled rule as applicable to the subject under consideration, is this, that the holder is not bound to give notice to any one but his immediate indorser, and hence the rule which was formerly asserted, namely, that the notice must come from the holder, is no longer recognized as good law. (Edw. on Bills, 627.)   Chitty on Bills, 527, says: " According to more recent decisions, it is not absolutely necessary that the notice should come from the person who holds the bill when it was dishonored, and it sufficeth if it be given after the bill was dishonored, by *any person who is a party to the bill*, or who would, on the same being returned to him, and after paying it, be entitled to require reimbursement, and such notice will in general inure to the benefit of all antecedent parties, and render a further notice from any of those parties unnecessary, because it makes no difference who gives the information, since the object of the notice is that the parties may have recourse to the acceptor."   Mr. Justice BAYLEY, in his work on Bills, p. 256, says, " that it is prudent in each party who receives a notice to give immediate notice to those parties against whom he may have the right to claim, for the holder may have omitted the notice to some of them."   It is not essential that the notice should be given by the holder; and *Tindall* v. *Brown* (1 Term, 167), and *Ex parte Barclay* (7 Ves., 597), holding the contrary, were expressly overruled in *Chapman* v. *Keane* (3 Adol. & Ellis, 193, and the cases there cited). Lord DENMAN said, if the holder only could give the notice, then he might secure his own rights against his immediate indorser by regular notice; but the latter and every other party to the bill would be deprived of all remedy against anterior indorsers and drawers, unless each of those parties should in succession take up the bill immediately on receiving notice of dishonor,

a supposition that cannot reasonably be made. The principles which must govern the decision of the present case are clearly and succinctly laid down by that accurate writer on bills (Edwards, 623). He says: "The holder should give notice of dishonor to all the parties to whom he intends to look for payment; but it is enough for him *to send* or *give due* notice to his indorsers, for the purpose of charging the party indorsing the bill over to him; and it is the business of each indorser to take care that the party responsible to him is duly notified. Whether there be few or many indorsers, the duty of each is the same; if the notice be transmitted from one indorser to another in the usual order of their indorsements, and one of them sends it forward on the day he receives it, and a prior indorser lets it lie over one day too late, the latter cannot excuse his neglect by showing that the holder or one of the subsequent indorsers had used greater diligence than was required of him, so that altogether there had been no more time consumed in giving the notice than the law would have allowed if each party had mailed the notice on the next day. The over-diligence of one will not supply the want of diligence in another." These principles are enunciated and illustrated in numerous cases. The most important and significant of them will be adverted to. *Dobree* v. *Eastwood* (3 Carr. & P., 259), held, that where there are several indorsers of a bill, the holder may, when it has been dishonored, either resort to his immediate indorser, and then he must give him notice within the proper time, or he may resort to the drawer, and then he must give him notice within the same time. *Morgan* v. *Woodworth* (3 Johns. Cases, 89), held that the second indorser, on receiving notice of the dishonor of the note, is bound to give notice immediately to the first indorser; and if he fails to give such notice as soon as he receives it from the holder, the preceding indorser is not liable to him.

In *Bank of Utica* v. *Smith* (18 Johns., 230), Smith was the payee and first indorser, and the note was held and owned by plaintiff, at Utica. It was indorsed by plaintiff's cashier, and transmitted to a bank in New York, where the same was

payable. The notice for Smith was inclosed to Hunt, cashier of plaintiff, at Utica, who transmitted it to the defendant, who resided at Peterboro. The court said, by SPENCER, Ch. J., that the transmission of the notice to the defendant, at Peterboro, by the way of Utica, to Hunt, cashier of the Bank of Utica, was sufficient. It was in proof that letters sent to the defendant went through the post-office in Utica. It appeared that letters for the defendant from New York were sent both by the way of Utica and by the way of Cherry Valley indiscriminately, and that, in point of fact, the notice was not delayed by being put under cover to Mr. Hunt. The court said, even if it be admitted that the notice would have reached the defendant a day or two sooner, had it been sent by the way of Cherry Valley, it does not prove that there were *laches* or unreasonable delay in giving the notice.

In *Mead* v. *Engs* (*supra*), it was held that notice of non-payment of a bill of exchange must generally be given by an indorser to the indorser next before him, by the next post after he himself has received notice of the dishonor, and so on to the drawer. But even this rule is not inflexible. It means, the next convenient post. Reasonable diligence and attention, is all the law exacts. In that case, the bill was drawn in New York on one Bowne, residing at Bristol, Rhode Island. The defendant was the payee, and indorsed it and delivered it to one Flewelling. It was transmitted by him, after being indorsed, to the Roger Williams Bank, of Providence, which indorsed it and sent it to the Freemen's Bank, of Bristol, for collection. It was duly accepted, and at maturity payment was demanded, on the 20th of October, the day it became due, by the notary, who on that day protested it for non-payment, and returned it to Richmond, cashier of the Bristol Bank. Richmond sent the bill and protest on the next day, by the next mail, to Smith, cashier of the Roger Williams Bank at Providence. Smith received the bill and protest October 22d, and forwarded them by the first mail after so receiving them to Flewelling, at New York. Flewelling received them October 25th, in a letter postmarked October 23d, and in due time gave notice to the defendant.

It was held there was no laches, and that the defendant was duly charged as indorser, although there was another mail leaving Providence, after Smith received the notice, by which the same might have been sent to Flewelling; and if it had been sent by that mail, it would have reached him one day sooner. I can see no difference in principle between that case and the one at bar, and none, in fact, except that there the acceptor and the indorser sought to be charged lived in different places. That circumstance will be hereafter considered.

*Howard* v. *Ives* (1 Hill, 263), is quite in point. The defendant was sought to be charged as indorser to the plaintiff of a bill of exchange drawn on and accepted by one Webster, of the city of New York. The plaintiff had indorsed it to the Union Bank of that city for collection, and the latter gave it to their notary, who presented and protested it for non-payment on Saturday, August 21st, between the hours of 3 and 5 P. M. On Monday following, the notary mailed notice of protest to the plaintiff, inclosing another for the defendant, in season for the New York mail to Troy, at which latter place the plaintiff resided. The plaintiff received these notices on Tuesday following, at 8 o'clock A. M., and the same day, after 9 A. M., the notice of protest intended for the defendant was mailed at Troy, directed to him at Lansingburgh, his place of residence, but the mail for the day had closed before this was done. It was contended, on the part of the defendant, among other things, that the notice for him should have been mailed in New York, directed to the defendant at Lansingburgh. The court, by COWEN, J., say, the mailing by the plaintiff at Troy was clearly in season. It was done the very day on which the plaintiff received notice, no matter whether before or after the post had departed for Lansingburgh. In this method of charging indorsers and drawers, by consecutive notices from one party to the next immediately preceding him, the former is never bound to forward notice on the very day upon which he receives it, but may always wait till the next. (Citing Chitty and Bayley on Bills; *Bray* v. *Hawden*, 5 Maule & Sel., 68.) See, also,

*Eagle Bank* v. *Chapin* (3 Pick., 180), and *Bank of the United States* v. *Davis* (2 Hill, 451).

The doctrine of these cases has received the emphatic approval of this court in the case of *The Farmers' Bank of Bridgeport* v. *Vail* (21 N. Y., 485.) In that case the defendant was sought to be charged as the payee and indorser of a promissory note, made and dated at the city of New York, and payable at a bank in that city. The defendant resided at Sing Sing, in this State, and the note was indorsed to and held by the plaintiff, a corporation located at and doing business in the State of Connecticut. The plaintiff transmitted the note to a bank in the city of New York, for collection, &c., on the day of its maturity, which was Saturday, January 27th; the bank in New York placed the same in the hands of a notary, who demanded payment thereof, and the same being refused, protested it, and on the succeeding Monday put two notices of protest in the New York post-office, one addressed to the defendant inclosed in an envelope to the plaintiff at Bridgeport, and the other to the defendant in New York. There was nothing on the note to show where the defendant resided, and the notary did not know his residence. On Tuesday, January 30, the plaintiff received the notice of protest which the notary had sent, and placed it in the post-office at Bridgeport, properly directed to the defendant, and he received it immediately thereafter. This court held the indorser duly charged, and that due diligence had been used. WRIGHT, J., said, when an indorsee intends charging previous indorsers by consecutive notices, and they reside in different places, due diligence will have been used when notice is sent the day following that on which it is received. The rule is the same though the paper is indorsed from one to another agent for collection merely. Each of such indorsers is to be regarded as a party for all the purposes of charging prior parties. DENIO, J., after citing *Howard* v. *Ives* (*supra*), says: That case establishes first, that the holder's agent at the place of payment may forward the notice to his principal in the interior, and if the latter forward it seasonably to the party to be charged he

will be fixed, though more time is consumed than there would have been if the agent had sent it directly to the party to whom the ultimate notice was to be given. Second, that when the note matures on Saturday, the notice need not be mailed until Monday; and thirdly, that in case of a circuitous notice, it will be in time if the intermediate party forwards it the next day after he receives it. The case would be decisive of the one now under examination, but for the feature which distinguishes it, namely, that in this case the party to be charged, and the one primarily to give the notices, were both residents of the same place, to wit, the city of New York, and it is contended on the part of the appellant that this fact withdraws this case from the operation of the doctrine of the cases cited and commented upon.

It is conceded, as already remarked, that where the party whose duty it is to give the notice to charge another party on the same paper, and both reside in the same place, the notice must be given either by personal service or by leaving it at the dwelling house or place of business of the party sought to be charged. This is a familiar, universal and well established rule, but it is only applicable where the party whose duty it is to give the notice and the party whose right it is to receive it *from him,* both reside in the same place. In such a contingency only has it any force or application. As, for instance, in the present case, if the appellant had been the immediate indorser of the Nassau Bank, then it would have been the duty of that institution to have given the notice in one of the three ways already indicated. But we have seen that it was not the duty of that bank to give notice of the dishonor of the bill to all or any of the parties to it, except to its immediate indorser. Therefore their whole duty was discharged when they duly transmitted the notice of protest to the Eliot Bank of Boston. No question is made that that bank did not duly and seasonably transmit the notices to the plaintiff, its immediate indorser, nor that the plaintiff did not duly and seasonably, upon its receipt, transmit the same to the appellant. The authorities to sustain these positions are abundant. A leading case is that of

*Hilton* v. *Shepherd*, cited in 6 East, 14, where a bill of exchange passed through the hands of five persons, all of whom lived in London, except the last indorser, Scott, who lived near at a place called Stratford. The bill was in the hands of one Trimmer, in London, and who lived at White Friars, in London, when it became due. The bill was drawn by one Pyne, payable to the order of Shepherd, the defendant, and made payable at a banking house in Pall Mall. It was indorsed by the defendant to the plaintiff Hilton, by the plaintiff to William Bucklee, by William Bucklee to Messrs. Fox & Payne, by them to James Scott, and by Scott to one Trimmer. It was presented by Trimmer at the banking house where payable, on a Saturday, the day it matured, and payment being refused, Trimmer, on that day, gave notice of its dishonor to Scott, at Stratford. This was the 21st of November. The next day, Sunday the 22d, Scott gave a like notice to Fox & Payne, Fox being then at Stratford. On Monday, the 23d, about 12 o'clock, Fox gave the like notice to Bucklee, and who, at his desire, on Tuesday morning the 24th, at 10 o'clock, gave the like notice to Hilton, the plaintiff, in Oxford street, and he, on his return home from the city, at 12 o'clock the same day sent a notice by letter to the defendant of the non-payment of the bill. On the part of the defendant it was contended that here had been laches, as the bill became due on the 21st, and no notice was given to the defendant until the 24th. On the part of the plaintiff it was contended that there had been no laches, that here the note had traveled through five different hands, and though the law should presume that the holder knows the residence of the person from whom he immediately receives it, yet he cannot be presumed to know the residence of the other indorsers. Therefore, in passing through so many hands, time must be consumed, though no laches can be imputed in any one instance; and if due diligence was used in respect of each particular transaction, that cannot constitute laches in the whole. In these views the court concurred, and the *postea* was delivered to the plaintiff. The same rule is recognized in *Reeve* v. *Tipper*,

(20 Law and Eq. R., 220). MAULE, J., said: "Each indorser has 'his own day.' He is required to use due diligence; he is not bound to abandon all other business the instant he receives notice, and set about giving notice to others. The rule has been established that he may wait until the next day, and then give notice."

*Colt* v. *Noble* (5 Mass., 167), is an instructive case. There the defendant, who resided at Portsmouth, New Hampshire, indorsed a bill of exchange in Madras, drawn on London, and sold the same to the plaintiffs. The plaintiffs forwarded the bill from Madras to London for collection, and the same not being paid at maturity, the plaintiffs' agents in London caused the bill to be protested, and in a reasonable time returned the bill and protest to the plaintiffs, their principals, then living in Madras. It was agreed that the agents might have sent notice to the domicil of the defendant of the non-payment and of the protest in three months after the same matured, and that no notice thereof was at any time so sent by the agents or given to the defendant, but that due notice was given him by the plaintiffs from Madras, in July, 1805, more than a year after the bill had been protested in London, which notice was in a reasonable time after the return of the bill and protests from London to Madras. PARSONS, Ch. J., states the point in the case substantially to be, whether the agents in London of the holders of the bill in Madras were bound to give notice of the protest to the defendant, the indorser, or only to return the bill with the protest to their principals, who were seasonably to give notice. The court held the indorser duly charged.

The precise question, presented for adjudication in this case, arose and was decided in the Superior Court of New York, in *Ogden* v. *Dobbin* (2 Hall, 112). The note was made by the firm of Goddard & Burnap, of Eatonton, Georgia, in favor of the defendants, and payable to their order at a bank in Eatonton, and indorsed by the defendants to one Molyneux. He indorsed the same to the firm of Stiles & Fannier, of Savannah, and by them it was indorsed to one D. B. Halstead, of Milledgeville, who also put his name upon it. It

also appeared that Stiles & Fannier had forwarded the note to Halstead for collection, and that he immediately transmitted it to the bank at Eatonton for collection. At maturity the note was duly protested, and notice for the defendants inclosed to Halstead. The day after Halstead received the notice, he put it into the mail, directed to the defendants, at New York. If the notice had been sent direct to the defendants from Eatonton, it would have reached that city on the 28th of March; whereas, by the route adopted, it could not arrive there until the 3d of April. OAKLEY, J., in delivering the opinion of the court, said, there was no want of diligence in giving notice to the defendants. The objection rests on the ground that Halstead, knowing the residence of the defendants, ought to have informed the cashier of the bank, and, in that case, notice would have been received by the defendants several days sooner. The rule governing this part of this case seems to be clearly laid down in *Mead* v. *Engs* (*supra*). The Supreme Court there fully establish the principle, that the holder of a note, receiving and indorsing it for the purpose of collection, and being, therefore, merely an agent, is, nevertheless, to be considered as the real holder, for the purpose of receiving and transmitting notices. And the general rule seems clearly settled, that it is sufficient to give notice of non-payment, with reasonable diligence, to the indorsee from whom the note was received, that he may give notice to his immediate indorser, &c. Applying that principle to the present case, it was enough for the cashier of the bank or the notary to give notice, by the earliest opportunity in the regular course of mail, to Halstead, which was done; and it would have been sufficient for him to have given the like notice to his immediate indorsers at Savannah. It is clear that the defendants in this case received the notice as soon, or sooner, than they would have done if it had been remitted in that circuitous manner. (Story on Bills, § 292; Chitty on Bills, pp. 521, 523; 3 Kent's Com., 108; *Scott* v. *Lifford*, 9 East, 347; *Langdale* v. *Trimmer*, 15 id., 291; *Bray* v. *Hadwen*, 5 M. & S., 68; *Robson* v. *Bennett*, 2 Taunt., 388; *Daly* v. *Slater*, 5 Car. & P., 200.)

This court, in *Spencer* v. *Bulson* (18 N. Y., 327), distinctly announced the duty of the holder of a note protested as to the parties to be notified by him. It was then said the plaintiff was under no obligation to the defendant to charge the prior indorser, and might lawfully direct that notice of the protest be served only on the defendant. The holder of a note is required to charge only the indorsers to whom he desires to look for payment, and it belongs to each indorser to see for himself that prior indorsers are duly fixed if he would have a remedy over against them.

The text writers and all the authorities I have examined concur in the doctrine, that the whole duty of the holder is discharged by notice to his immediate preceding indorser, and that all prior indorsers are fixed, if they receive seasonable notice of the dishonor of the bill or note from their immediate prior indorser. These rules have long been settled and familiar to those dealing in notes and bills of exchange. It is of the utmost importance that rules of this character, when once promulgated, should be adhered to, and we are not at liberty to depart from them if we would. I find no case where an exception has been made, by reason of the circumstance, that an intermediate indorser is a resident of the same town, city or village with the holder. If he is not the immediate prior indorser of the holder at the time of protest, the whole duty of the holder is discharged by the notice to his immediate indorser, and all parties to the bill or note will be charged, if they receive notices in due course, from their immediate subsequent indorsers. The appellant in this case, as it is conceded, received such notice, and therefore, according to an unvarying current of authority, was legally charged as indorser of this bill.

The judgment appealed from must therefore be affirmed.

All the judges concurring,

Judgment affirmed.