EDWIN SMITH, AS EXECUTOR, ETC., RESPONDENT, *v.* CORNE-LIUS POILLON AND RICHARD POILLON, APPELLANTS.

*Indorser of note — notice to — when it need not be sent by the first mail.*

This action was brought by the second against the first indorsers of a promissory note, made by a corporation payable at its office in the city of New York. On the day of its maturity, March 4, 1875, separate notices of protest to the plaintiff, the defendants and the third and last indorser, the cashier of a bank at Thomaston, Maine, were prepared by a notary in New York, inclosed in one envelope and mailed to the cashier at Thomaston. The notices were received at that place after banking hours on the fifth, and by the cashier on the morning of the sixth, by whom they were forwarded by the next mail to the plaintiff, who lived at Warren, a place distant about four miles from Thomaston. The plaintiff received them on the evening of the sixth, and on the next morning went to Thomaston for advice as to his proper course. In pursuance of the advice so received he mailed at Thomaston a notice addressed to the defendants at New York by the second mail of that day, which left Thomaston at 1 :40 P. M. and passed through Warren at 2 P. M. The first mail left Thomaston at 10 :10 A. M., and closed at Warren at 9 :30 A. M. The plaintiff, who was upwards of eighty years of age, was a lawyer by profession but had been out of practice for twenty-five years.

*Held*, that the plaintiff was not chargeable with negligence in not posting the notice in time for the first mail leaving Warren on the morning of the seventh, and that the defendants were liable upon the note.

APPEAL from a judgment in favor of the plaintiff, entered on the verdict of a jury, and from an order denying a motion for a new trial, made upon the minutes of the justice before whom the action was tried.

*Albert A. Abbott,* for the appellants.

*James McKeen,* for the respondent.

BARRETT, J. :

This action was against the first indorsers of a promissory note made by a corporation called The McNeal Coal and Iron Company. The note was made payable at the office of the company. That office, at the date of the note, was in the city of New York. The defenses were : First. That the note was not presented at maturity, according to its tenor, at the company's office; and, second, that the notice of non-payment was insufficient to charge these indorsers. As to the first defense, we think the verdict was in accordance with the facts. The notary testified, generally, that he presented the note at the office of the company, 111 Broadway ; he had frequently presented drafts at the same place ; the name was still upon the door, and there was a person in charge of the office. This was sufficient *prima facie.* The answer to it failed to carry conviction. No officer of, or person connected with, the company was examined. The defendants contented themselves with calling the superintendent of Trinity building and an ex-president of the company. The former knew nothing positively upon the subject. In fact, the company was never a direct tenant of the building. He, however, remembered the fact of the company being in the building as the occupant of an office with another party. The former president stated that, at the maturity of the note, the company had no office in the building, nor indeed any office at all in New York. How he knew this was not disclosed, nor did he give any further information about the company or its whereabouts. But little weight could be attached to such testimony. It was conspicuous for its reserve, when entire frankness and fulness of statement were called for. How did he know that the company had no office at 111 Broadway on the 3d of March, 1873 ? When, if ever, did it

move from there? Where did it move to? Where was it upon the date mentioned? What, in fact, had become of it? These were questions upon which light should have been thrown, if the defendants expected the jury to give unqualified credence to the witnesses' testimony. But the effect of this testimony, even if it be given the weight claimed for it, was simply to dispense with the necessity for presentment and demand. If, as the witness says, the company had no office at all in New York — by which, in the absence of explanatory limitation, we are bound to understand New York State — it could properly be treated as a natural person who had removed from the State. In that aspect of the case, the indorser was chargeable, without presentment or demand. (*Foster* v. *Julien*, 24 N. Y., 28.)

We now come to the question, as to the sufficiency of the notice. The defendants resided in this city. They were, as we have seen, the first indorsers. The next name on the back of the note was that of the plaintiff's testator, Edwin Smith. Mr. Smith resided at a place called Warren, in the State of Maine. Underneath Mr. Smith's name appeared the words, " Pay G. F. Baker, Esq., or order, O. Robinson, cash." Mr. Robinson was the cashier of a bank at Thomaston, Maine, a place distant about four miles from Warren. The New York notary enclosed all the notices of protest; that is, a separate notice for the defendants, for Smith and for Robinson, in one envelope, and mailed them direct to " O. Robinson, cashier, at Thomaston, Maine." This, we think, upon the evidence before us, was done in due season, upon the 4th day of March, 1873. The notices reached Thomaston after banking hours upon the fifth, and were probably delivered to Robinson on the morning of the sixth. He forwarded them by the next mail, and they reached Smith at Warren upon the night of the sixth. The next morning, Smith and his son went over to Thomaston and the former took counsel as to his proper course. The result of the advice which he received was, the sending of notice to the defendants by the second mail of that day, which left Thomaston at forty minutes past one. This mail passed through Warren at 2 P. M. The first mail on that day left Thomaston at ten minutes after ten and Warren at half-past ten. It closed at Warren about half-past nine. The general rule upon this subject is, that the holder need only give notice to the

last indorser, and that all parties to the note are chargeable if they receive notice, in due course, from their immediate subsequent indorsers. (*West River Bank* v. *Taylor*, 34 N. Y., 128.) Each indorser has until the following day after he receives notice to notify the next previous indorser. We have no doubt that, up to the time of the receipt of the notices by Smith on the night of the sixth of March, every proper step had been taken. But the point made by the defendants is, that Smith should have sent the notice by the first mail, which left Warren on the morning of the seventh, and that, because it was not so sent they are discharged.

We cannot think that this contention is well founded. The strict rule thus invoked has been applied, mainly in cases where there was but one mail a day, and where, consequently, the day was lost by the failure to post the notice before the closing of such single mail.

Some of the authorities and text writers hold that, if two mails leave the same day, on the route to the place of the indorser, it is sufficient to deposit the notice in the post-office in time to go by either mail of that day, inasmuch as the fractions of the day are not counted. (*Lawson & Covode* v. *The Farmers' Bank of Salem*, 1 Ohio State, 206, and cases there cited ; 2 Daniel on Negotiable Inst., 84.) But the weight of authority in this State would seem to require the deposit of the notice in time for the first mail, closing after the commencement of reasonable business hours, which could be availed of with ordinary diligence. (*Smedes* v. *The Utica Bank*, 20 Johns., 372 ; *Mead* v. *Engs*, 5 Cow., 303 ; *Howard* v. *Ives*, 1 Hill, 263.) There is an absence of agreement in the cases, as to what constitutes reasonable business hours. In one locality, half-past nine A. M. was thought unreasonably early ; while in others, it was held that, where the mail closed at ten minutes past nine A. M., the notice should have been sent by it. (See on this head *Haskell* v. *Boardman*, 8 Allen, 38 ; *Lawson* v. *Farmers' Bank*, *supra ; Burgess* v. *Freeland*, 24 N. J. L., 71 ; *Hawkes* v. *Salter*, 4 Bing., 715 ; 1 Smedes & M., 261 ; *Sussex Bank* v. *Baldwin*, 2 Harrison [N. J.], 487 ; *Chick* v. *Pillsbury*, 24 Me., 458-466.)

The question after all is, whether the party used reasonable and ordinary diligence ? (Edwards on Bills, 618 ; *Howard* v. *Ives*, *supra*.) And the usages of the place are to be considered in

determining what is such diligence (Edwards on Bills), so naturally are all the surrounding circumstances. Now, here we find, that Smith was upwards of eighty years of age; that he received these notices at night, and that the first mail closed next morning about half past nine. Smith was a lawyer by profession, but had been out of practice for twenty-five years. We do not think that this aged man was chargeable with negligence in not posting the notice in time for the mail leaving by the early train. There was no delay thereafter. The counsel testifies that there was not time during the business hours of the morning to prepare the letter to the defendants (and notice) for mailing, before the first mail of that day. Under the circumstances, we think Mr. Smith exhibited great activity, and so long as he did not lose the day he should not be deprived of his just remedy against these indorsers.

We are satisfied after full consideration, that these defendants were properly charged, and that the judgment should be affirmed, with costs.

DAVIS, P. J., and BRADY, J., concurred.

Judgment affirmed, with costs.