(28 Misc. Rep. 52.)

#### UNIVERSITY PRESS, JOHN WILSON & SON, v. WILLIAMS.

##### (Supreme Court, Trial Term, New York County.   June, 1899.)

1. **BILLS AND NOTES—PROTESTS PRIOR TO NEGOTIABLE INSTRUMENTS LAW.**
   Where notes have been protested prior to the present negotiable instruments law, which took effect October 1, 1897, questions concerning demand and notice must be decided without regard to that enactment.

2. **SAME—LAW GOVERNING WHERE INDORSER IS NONRESIDENT.**
   Where notes were made and indorsed at New York City, and payable there, and the indorser resided out of the state, demand of payment and notice of dishonor must be made and given according to the laws of the state of New York.

3. **SAME—NOTICE OF DISHONOR—SUFFICIENCY.**
   Where it appears, in an action against defendant as indorser of certain notes, that defendant, knowing the maker of the notes could not meet them at maturity, assured plaintiff that he would pay them, and that he secured himself against loss by judgments recovered against the maker before the notes became due, and that plaintiff did not know where defendant resided, and defendant took no pains to inform him, and notices of dishonor were sent to the best address plaintiff could obtain, there was sufficient diligence on part of plaintiff to charge defendant.

Action by the University Press, John Wilson & Son, Incorporated, against George B. Williams, as indorser of two promissory notes. Judgment for plaintiff.

Gould & Wilkie, for plaintiff.
Alexander & Green, for defendant.

McADAM, J.   The action is to charge the defendant as indorser of two promissory notes, and the defense is want of notice of dishonor.   The protests having been made prior to the present "negotiable instruments law," which went into effect October 1, 1897; the questions concerning demand and notice must be decided without regard to that enactment.   The notes were made and indorsed at New York City, and were payable there.   The defendant claims that at the time the notes were protested he resided at Washington, D. C., but he failed to put that address on the notes, and did not in any manner indicate thereon any place where notices of protest were to be sent.   The plaintiff did not know that the defendant resided at Washington, and the latter took no pains to inform the plaintiff thereof, and notices were sent to the best address the plaintiff's officers could obtain.   They could do no more.   In this instance the demand of payment and notice of dishonor must be made and given according to the laws of the state of New York.   In order to charge an indorser, it is not necessary that he should actually receive the notice of protest.   It is sufficient that such notice has been properly served according to some legal method.   Requa v. Collins, 51 N. Y. 147.   The rule is that, "when the residence [of the indorser] is unknown, then diligence in the endeavor to find the person, or to learn his residence or place of business, is deemed all that is reasonable to require, and that shall stand as in the place of notice."   Bartlett v. Robinson, 39 N. Y. 187; Requa v. Collins, supra.   One test of diligence is that each indorser, on receiving notice of protest in due

course, must be prompt to transmit the notice to his prior indorser, and this procedure was followed here. Mead v. Engs, 5 Cow. 303; Bank v. Taylor, 34 N. Y. 133; Bank v. Vail, 21 N. Y. 485. It also appears in the case, without contradiction, that Stone & Kimball, a corporation, the maker of the notes, failed before their maturity; that Mr. White, the treasurer of the plaintiff, had a conversation with the defendant and Mr. Whitford, his attorney, in reference to said notes, at the office of the Stone & Kimball Company, and that both then and there assured Mr. White that he need not be worried about the failure, as these notes would be paid by Mr. Williams, the defendant, who was abundantly able to meet them. This was practically an unconditional assumption of the debt by the defendant, who, knowing the maker could not meet the notes at maturity, asserted both his intention and ability to do so. See Sheldon v. Horton, 43 N. Y. 93, and kindred cases. It further appears that the defendant secured himself against loss by judgments recovered against the Stone & Kimball Company before the notes in suit became due. It would look like departing from the course of justice to hold that the defendant, on what now seems to be a technicality, must be discharged from liability under such circumstances. Upon the entire case it can be held, without violating any settled principle of law, that there is sufficient evidence of diligence on the part of the plaintiff to charge the indorser, and authorize the judgment plaintiff demands.

Judgment for plaintiff.