BANK OF THE UNITED STATES, Plaintiff, *v.* JULIUS LUNENFELD, Defendant.

Supreme Court, Trial Term, New York County, December 9, 1937.

*Carl J. Austrian*, for the plaintiff.

*Isidore Dollinger*, for the defendant.

POLETTI, J.   This is an action on two promissory notes brought by the Bank of United States against Julius Lunenfeld.   The two notes were executed on June 18, 1929, by the Bader-Eisenstein Realty Corporation through its president, Sam H. Ellman, and were made payable to the order of the Canal Securities Corporation. Both notes bear the indorsements of J. Lunenfeld, Sam H. Ellman, Canal Securities Corporation by Louis Rosetti, president, and A. Dolowitz, secretary, in the order named.   The defendant J. Lunenfeld is an accommodation indorser on both notes.   The two notes were discounted by the plaintiff for the payee.

One note was for $5,500 and payable twenty-one months after the date of execution, to wit, March 18, 1931.   The court finds that on the date of maturity Walter H. Potter, a notary public in the employ of the Guaranty Trust Company, the collecting agent for the plaintiff, duly presented the note and duly protested its

non-payment. He sent a notice of dishonor to the defendant in care of the Superintendent of Banks, Bank of United States, No. 535 Fifth avenue, New York city. Upon receipt of this notice at that address, the notice was forwarded to the defendant at No. 84 William street, New York city, by Egbert Pardee, a notary public employed by the plaintiff. In support of plaintiff's contention that this notice of protest was forwarded to the defendant at this address, plaintiff submitted an affidavit by the notary of due notice of protest, and Pardee testified that it was the custom and practice to consult the bank records and the signature cards for the correct address and to forward such notices to the designated parties at such address.

The address on the signature card was identical with that appearing under the defendant's indorsement on this note and, therefore, Pardee forwarded the notice to No. 84 William street, New York city. The procedure of forwarding such notice is proper. (Neg. Inst. Law, § 165; *Brill* v. *Jefferson Bank,* 159 App. Div. 461; *Miller* v. *Hackley,* 5 Johns. 375; *West River Bank* v. *Taylor,* 34 N. Y. 128; *Traders Nat. Bank* v. *Jones,* 104 App. Div. 433.)

The defendant testified that he did not write this address beneath the signature on this note, that he never received the notice, that he never had an office at this address, that he was merely a director of a corporation which had offices there, that he was not in the habit of receiving mail there, and that prior to the time the notice was sent he had resigned as director of the corporation. However, there is no testimony indicating that the plaintiff had any knowledge thereof.

While it was brought out by the testimony of Mr. Dolowitz, secretary of the payee corporation, that it was he who wrote the address, No. 84 William street, beneath defendant's signature before he had the note discounted by plaintiff, the defendant did designate that address on the signature card he filed at the bank.

Plaintiff exercised due diligence in the matter by checking the address on the note with that submitted to it by the defendant on the signature card. There was no reason for the plaintiff to suspect that this was not the defendant's notation or that the address was incorrect. It concluded, and rightly so, that it was the correct address. To require the plaintiff to inquire further and to mail the notice to an address other than that appearing on the note would be unreasonably exacting more than ordinary diligence. To ask the plaintiff to assume the risk of mailing the notice to an address of its own selection would impose upon it the responsibility of assuring the receipt of the notice by the defendant. Such requirements are not prerequisites of due notice under

the Negotiable Instruments Law, and no cases can be found holding such to be the law.

The plaintiff produced testimony that the letter was never returned to its office, although it bore a return address. Section 179 of the Negotiable Instruments Law requires that notice of dishonor be sent to the address designated by the indorser of the note, and the courts of this State and other States which have adopted the Negotiable Instruments Law hold that a mailing of the notice to the address designated by the indorser on the note is sufficient though it in fact never reaches the indorser. Further, should an indorsee mail notice to an address other than that designated by the indorser of the note, he does so at his own risk. (*Century Bank* v. *Breitbart*, 89 Misc. 308.)

The contention that plaintiff did not exercise due diligence is without foundation, for it confirmed the address on the signature card, which corresponded with the address written on the note. The law never required actual notice to the indorser; the exercise of due diligence sufficed to charge an indorser. (*Gawtrey* v. *Doane*, 51 N. Y. 84, 89; *Libby* v. *Adams*, 32 Barb. 542; *Manchester* v. *Van Brunt*, 2 Misc. 238.)

The plaintiff is entitled to recover the face amount of the $5,500 note, with accrued interest.

The second note was for $800, payable eighteen months after the date of execution, to wit, December 18, 1930. The court finds that on the date of maturity James O'Hare, a notary public in the employ of the Guaranty Trust Company, the collecting agent for the plaintiff, duly presented this note and duly protested its non-payment. He sent a notice of dishonor to the defendant as Louis Lunenfeld at No. 498 West End avenue, New York city. The defendant's name is Julius Lunenfeld, but he indorsed the note as J. Lunenfeld. The notice was never returned, although it had a return address. The defendant testified that the only persons with the surname of Lunenfeld living at that address were his own family and his father, Morris, who resided with him. The address to which this notice was mailed was the address which defendant had designated on the note, and, hence, was the proper place to send such notices. (Neg. Inst. Law, § 179.) The testimony showed that mail addressed to the Lunenfelds was left with the doorman by the mail carrier, and that the doorman would bring it to defendant's apartment.

From all the testimony there flows a reasonable inference that the defendant received the letter, which inference has not been adequately rebutted to the satisfaction of the court. Moreover, the court does not believe that the error of writing " Louis " instead

of " J " or " Julius " constitutes such a misdescription or improper addressing as to nullify the notice of dishonor.

The defendant's contention that the sections of the Negotiable Instruments Law relating to notice of dishonor should be strictly construed finds no foundation in the Negotiable Instruments Law itself, nor in the cases determining what constitutes proper notice of dishonor. The statute and cases (Neg. Inst. Law, §§ 166, 176; *Hodges* v. *Shules*, 22 N. Y. 114; *Manufacturers & Traders Bank* v. *Hazard*, 30 id. 226; *Bank of Geneva* v. *Howlett*, 4 Wend. 328; *Wilson* v. *Peck*, 121 N. Y. Supp. 344; *McGrath* v. *Francolini*, 92 id. 359; *Requa* v. *Collins*, 51 N. Y. 144) well illustrate the attitude of the courts on this point. To hold otherwise would be erecting an impediment to the free flow of commerce and credit, contravening the spirit and purpose of the Negotiable Instruments Law and embarking upon a course which the courts have steadfastly avoided.

The mailing of the notice of dishonor to the correct address, addressed to Louis Lunenfeld, which is the correct surname, even though the first name is incorrect, and the fact that no other party with the same surname resided at the premises, in addition to the testimony that the letter was never returned to the sender, are facts adequate to warrant the finding that the notice was sufficient to hold the defendant liable on the note. The court, therefore, awards judgment to the plaintiff for both notes, amounting to $6,350, with interest, together with costs.