EDWIN SMITH, as Executor, etc., Respondent, *v.* CORNELIUS POILLON et al., Appellants.

Notice of dishonor of a promissory note, where the parties live in different places between which there is a communication by mail, and several mails each day, must be posted by the first practicable and convenient mail of the next day after dishonor or notice of dishonor.

Ordinary and reasonable diligence, however, only is required, and as to what is the first practicable and convenient mail depends upon circumstances, and may be controlled by usage and the condition, situation and business engagements of the party required to give notice.

Whether sufficient diligence has been shown, the facts being undisputed, is a question of law.

Statement of case.

In an action by a second against the first indorser upon a promissory note, made in the city of New York by a foreign corporation, payable at its office three years after date, it appeared by plaintiff's evidence, that the note was on the last day of grace presented for payment by a notary at an office in said city, where the corporation either then or a short time before had its office, and upon which was a sign indicating that it was the company's office. Payment was demanded of the person in charge, and the note was protested for non-payment. Defendant's evidence tended to show that said office was the last office occupied by the company in this State, but that at the time of demand it had ceased to be such office. *Held,* that a defense·based upon the ground of want of proper presentation and demand was untenable ; that if the office, when demand was made, was the office of the company, presentment was properly made there ; if not then the office, as it was its last office, and as the corporation had removed its office and left the State, no presentment and demand in any place was necessary to. charge the indorsers.

Also *held,* that the last proposition was unaffected by the fact that the complaint alleged presentment and demand ; this did not preclude proof that presentment and demand had been waived or rendered unnecessary.

It appeared that the note was protested March 3, 1873. On the next morning the notary caused notices to be drawn up, which he signed, one to defendants, the first indorsers, one to S., plaintiff's testator, the second indorser, and one to R., cashier of a bank at T., in Maine, the last indorser. These notices the notary inclosed in an envelope directed to R. at T., and gave the package to his clerk before 2 P. M. to mail in the N. Y..post office. It was the duty of the clerk to mail letters so delivered, and he had been in the habit of so doing for years. The clerk, as a witness, testified that he had no particular recollection of this letter, but that he mailed notices of protest between 1 and 2 P. M. that day, and all the letters that were given him. Letters mailed at the time specified, if the train made connection at Boston, would reach T. on the evening of March 5th; if not, they would reach T. at noon of the 6th. The notices reached their address March 5th or 6th, and R. by the next mail mailed to S. at W., his place of residence, the notices addressed to him and to defendants. They were received by S. on the evening of March 6th. . There were two mails daily between T. and W., a distance of four miles, one leaving at 10 A. M., the other at 1:40 P. M. *Held,* that the evidence established that the notices were mailed in time at N. Y., and left no question for the jury.

S., who was over eighty years of age, on the morning of March 7th went to T. to consult counsel, and there mailed to defendants the notice addressed to them at N. Y., by the mail leaving at 1:40 P. M, which passed through W. at 2 P. M. The first mail leaving T. at 10:10 A. M. closed at W. at 9:30 A. M. *Held,* there was no error in holding, as matter of law, that due diligence was used by S. in posting the notice.

(Argued January 19, 1882 ; decided January 31, 1882.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made January 28, 1881, which affirmed a judgment in favor of plaintiff, entered upon a verdict, and affirmed an order denying a motion for a new trial. (Reported below, 23 Hun, 528.)

The nature of the action and the material facts are stated in the opinion.

*Albert A. Abbott* for appellants. The office of the McNeal Coal and Iron Company being specified in the note as the place of payment, proof of presentment and demand at such office was a condition precedent to any liability of these defendants as indorsers. (*Bk. of U. S.* v. *Smith*, 11 Wheat. 171; *Shaw* v. *Reed*, 12 Pick. 132; *Ferner* v. *Williams*, 37 Barb. 9; Edwards on Bills [2d ed.], 149; 1 Daniels on Neg. Instr. 511.) It is only in cases where no place of payment is specified in the note that, as against an indorser, a holder is excused from presenting it outside of the State where it is dated.' (*Foster* v. *Julien*, 24 N. Y. 28.) Reasonable diligence was not exercised in notifying the defendants of the non-payment of the note. (*Smedes* v. *Utica Bk.*, 20 Johns. 371; *Mead* v. *Engs*, 5 Cow. 303; *Howard* v. *Ives*, 1 Hill, 263; *Sewall* v. *Russell*, 3 Wend. 276; *Haskell* v. *Boardman*, 8 Allen, 38; *Fullerton* v. *Bk. of U. S.*, 1 Pet. 604; *Sussex Bk.* v. *Baldwin*, 2 Harr. [N. J.] 487; *Burgess* v. *Vreeland*, 24 N. J. L. 71; *Lawson* v. *Farmers' Bk.*, 1 Ohio St. [N. S.] 203; *Freeman's Bk.* v. *Perkins*, 18 Me. 292.)

*James McKeen* for respondent. The facts being undisputed, what constitutes due diligence is a question of law. (*Farmers' Bk.* v. *Vail*, 21 N. Y. 485.) There was due diligence in mailing the notices. (*West River Bk.* v. *Fowler*, 34 N. Y. 128; *Farmers' Bk.* v. *Vail*, 21 id. 485; *Chick* v. *Pillsbury*, 24 Me. 458; 2 Daniels on Neg. Instr. 87; *Whitewell* v. *Johnson*, 17 Mass. 449, 454; Story on Bills, § 288; Story on Prom. Notes, § 324; 3 Kent's Com. 106.) If the company had no office in New York on the day the note came due, no

presentment was necessary; and if it was necessary, it was properly made at the place named, for it was the place where it last had an office. (*Foster* v. *Julien*, 24 N. Y. 28.)

EARL, J.   This action was brought to recover of the defendants as indorsers upon a promissory note, made in the city of New York by the McNeal Coal and Iron Company February 28, 1870, payable to their order three years after date, at the office of the company.

It was alleged in the complaint that the company, a Pennsylvania corporation, had an office in the city of New York at the date of the note, and that the note was payable at such office, and these allegations were expressly admitted in the answer.

The defendants defended the action upon two grounds: (1) That the note was not properly presented for payment and payment demanded; and (2) that notice of protest was not in due time served upon the defendants.   The trial judge held, that upon the undisputed evidence it appeared that notice of protest was duly served in proper time upon the defendants, and refused to submit the evidence in relation thereto to the jury, but he submitted the evidence as to the demand of payment to the jury, and they found in reference thereto in favor of plaintiff.   The judgment entered upon the verdict of the jury having been affirmed at the General Term, the defendants appealed to this court.

We are of opinion that there was no material question of fact to be submitted to the jury, and that upon the undisputed evidence the plaintiff, as a matter of law, was entitled to a verdict.   It is undisputed that the note on the last day of grace was placed in the hands of Mr. Baker, a notary, for demand and protest; that he took the note and went to an office, 111 Broadway, New York, in the Trinity building, where the company either then had or shortly before had had its office, and that he there presented the note and demanded payment thereof of the person in charge of the office, and

that there was then a sign at the door of the office, indicating that it was the office of the company.

The only dispute at the trial was whether the place at which the demand was thus made was at the time the office of the company, and there was evidence on the part of the plaintiff tending to show that it was. The evidence on the part of the defendant tended to show, and, if undisputed, did show, that that place had been the office of the company, its last office in this State, but that it had then ceased to be such office. If it was then the office of the company, it is undisputed that presentment and demand there was properly made; if it was not then the office of the company, it was the last office of the company within this State, and the company being a foreign corporation had removed its office and left the State. In such case it is well settled that no presentment and demand at any place are necessary, in order to charge the indorser. (*Foster* v. *Julien*, 24 N. Y. 28.) It matters not that the plaintiff alleged due presentment and demand in his complaint; that did not preclude him from proof upon the trial that presentment and demand had been waived or rendered useless and unnecessary. So it has been held that under an allegation in a complaint of a tender the plaintiff could, upon the trial prove that a tender had been waived, and thus rendered unnecessary. (*Holmes* v. *Holmes*, 9 N. Y. 525.) Therefore, even if the defendants were right in their contention that the place where the demand was made was not then the office of the company, the result, upon their own evidence, so far as that branch of the case was concerned, should have been the same.

We have now only to consider whether upon the undisputed evidence the defendants were in due time notified of the nonpayment of the note. This suit was commenced nearly six years after the note fell due, and the evidence therein was given more than seven years thereafter. After such a lapse of time the memory of witnesses cannot be expected to be full and minutely accurate, and some force should be given to the presumption that official duty was discharged. The last day of grace upon this note was the 3d of March, 1873; on that day

the notary presented the note for payment as above-mentioned and protested the same for non-payment. On the following morning he caused notices of protest to be drawn up, one to the defendants, the first indorsers, one to Smith, the second indorser, and another to O. Robinson, cashier, the last indorser, the cashier of a bank at Thomaston, Maine. He signed them all and inclosed them in an envelope and addressed the envelope to Robinson, at Thomaston, and gave the notices so addressed and inclosed to his clerk before two o'clock P. M., on that day, March 4, to mail in the New York post-office. It was the duty of the clerk to whom the letter was thus delivered to mail it, and he had been in the habit for years of attending to that branch of the notary's business. The clerk was then called who testified that he had no particular memory of that letter, but that he knew that he mailed notices of protest that day, and that he mailed all the letters that were given him to mail that day between the hours of one and two.

This was all the evidence it was practicable for the plaintiff to give that the notices were mailed at New York. If mailed as testified to by the clerk between one and two on the 4th of March, I do not understand it is disputed that they were mailed in time. It was further shown that a notice mailed in New York at the time named would reach Thomaston in the State of Maine, the residence of Robinson, to whom the letter was addressed, if the train from New York made its connection with the early train north from Boston, in the evening of March 5, but that if the New York train failed to make the connection at Boston, then the letter would reach Thomaston at noon on the 6th of March. It was also shown that this letter reached its address at Thomaston on the 5th or 6th of March, and that the notices for Smith, the next prior indorser, and for the defendants were mailed to Smith at his place of residence, Warren, in the State of Maine, by the next mail after they were received at Thomaston, and that they were received by Smith in the evening of March 6. As there were two mails daily from Thomaston to Warren, a distance of only about four miles, one leaving at 10:10 A. M., and the other at

1:40 P. M., the claim is made that the letter did not reach Thomaston until the 6th of March, after the first mail for Warren had been sent, and thus the appellants claim there was some evidence which would authorize the inference that the letter was not mailed in New York, as claimed by the plaintiff, on the 4th of March. But we think, under all the circumstances, such an inference was unwarranted and could not properly have been drawn by the jury if the case had been submitted to them. The presumption is very strong that Baker, an experienced notary, caused the notices to be mailed to Robinson, as his duty required, on the 4th, and that presumption is fortified by the evidence of himself and his clerk, and that presumption and evidence are not overcome by the fact that the letter did not reach Thomaston until the 6th of March. It may have been delayed in the mails or by failure of connection at Boston. The fact that the letter did not reach its destination until the 6th of March does not, under the circumstances of this case, furnish any evidence that it was not mailed between one and two o'clock on the 4th of March.

Smith was an aged man, upward of eighty years old. On the morning of March 7 he took the notices for the defendants and drove to Thomaston, for the purpose of consulting his counsel, and there, under the advice of his counsel, he wrote a letter addressed to the defendants, and inclosed it with the notice for the defendants in an envelope addressed to them, and caused it to be mailed at Thomaston, in time for the mail which left there for New York, the residence of the defendants, at 1:40 P. M. That mail passed through Warren, on its way to New York, at 2 P. M. There were two mails each day from Warren, one closing at about 9:30 A. M., and the other at about 1:30 P. M., and that letter went in the same mail that closed at Warren at 1:30. The contention on the part of the defendants is, that the law required that that notice should have been mailed by the first convenient, practical mail on the 7th, and hence that it should have been mailed by the first mail on that day; and, to sustain their contention, our attention is called to various authorities. (*Smedes* v. *Utica Bank*,

20 Johns. 372; *Mead* v. *Engs,* 5 Cow. 303; *Sewall* v. *Russell,* 3 Wend. 276; *Howard* v. *Ives,* 1 Hill, 263; *Haskell* v. *Board-man,* 8 Allen, 38; *Sussex Bank* v. *Baldwin,* 2 Harrison [N. J.], 487; *Burgess* v. *Vreeland,* 24 N. J. L. 71; *Lawson* v. *Farmers' Bk.,* 1 Ohio St. [N. S.] 206; *Freeman's Bk.* v. *Perkins,* 18 Me. 292.) These authorities, while not entirely harmonious, undoubtedly tend to sustain the rule that the notice must be sent on the next day by the first practical and convenient post.

The counsel for the plaintiff, however, contends that the rule is, that notice of dishonor in such cases may be sent to the prior party by any post of the next day, and he calls our attention to several authorities which tend to sustain his contention. (*Chick* v. *Pillsbury,* 24 Me. 458; *Whitwell* v. *Johnson,* 17 Mass. 449; 2 Daniels on Neg. Instr. 87; Story on Bills, § 288; Story on Prom. Notes, § 324; 3 Kent's Com. 106.)

From a careful examination of all these authorities and many others it is clear that the law is not precisely settled. It appears that at first it was supposed to be necessary that notice of dishonor should be given by the next post after dishonor, on the same day, if there was one. That rule was found inconveniently stringent, and then it was held that when the parties lived in different places, between which there was a mail, the notice could be posted the next day after the dishonor or notice of dishonor. Some of the authorities hold that the party required to give the notice may have the whole of the next day. Some of them hold that when there are several mails on the next day, it is sufficient to send the notice by any post of that day. Other authorities lay down the rule, in general terms, that the notice must be posted by the first practical and convenient mail of the next day; and that rule seems to be supported by the most authority in this State. What is a practical and convenient mail depends upon circumstances. It may be controlled by the usages of business and the customs of the people at the place of mailing, and the condition, situation and business engagements of the person required to give the notice. The rule should have a reasonable application in every case, and whether sufficient diligence has been

used to mail the notice, the facts being undisputed, is a question of law.

In *Mead* v. *Engs* (5 Cow. 303), notices of dishonor of a bill reached the post-office at the residence of the last indorser at 5 P. M., and actually came to his hands the next morning. The first mail thereafter for the residence of the prior party left at 1 P. M., but the notices for that party were not mailed until after that hour. SUTHERLAND, J., said : "The cashier was not bound in the exercise of due diligence to have prepared and forwarded notices by the one o'clock mail; it is not reasonable to demand from him the neglect of his other official duties to prepare his letters and notices during the usual banking hours;" and further, that "the law does not require the holder of a bill or note to give the earliest possible notice of its dishonor; it requires of him only an ordinary and reasonable diligence; nor is he bound, the moment he receives notice of the dishonor of a bill, to lay aside all other business and dispatch notice to the prior parties to the bill; if reasonable diligence is used, it is sufficient." In *Darbishire* v. *Parker* (6 East, 3), Lord ELLENBOROUGH observes: "There must be some reasonable time allowed for giving notice, and that, too, accommodating itself to other business and affairs of life; otherwise it is saying that a man who has bill transactions passing through his hands must be nailed to the post-office, and can attend to no other business, however urgent, till this is dispatched."

It does not appear here how far Mr. Smith lived from the post-office at Warren ; he was an aged man and wanted some advice about the matter. Early on the day after he received the notices, he went to Thomaston to see his counsel, and thus he missed the mail, which closed at Warren at 9 : 30. We think it cannot be said that the delay was unreasonable, or that there was the absence of that proper diligence which the law requires. There was, therefore, no error in holding as matter of law that due diligence was used by Smith in posting the notice to the defendants.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.