WINTHROP S. GILMAN AND ANOTHER, PLAINTIFFS, v. FIRST
NATIONAL BANK OF THE CITY OF NEW YORK,
DEFENDANT.

*Bills and notes — payment by mistake — right to recover — protest is necessary to hold
the drawer.*

In an action brought to recover money paid by mistake on a foreign bill of
exchange, it appeared that a Mrs. Cockran had deposited with a bank
in Cadiz, Ohio, a Kansas bond for collection; that the Cadiz bank forwarded
the bond to a Kansas bank, which collected it; that the Kansas bank, on
or about January twenty-third, drew a sight draft on the plaintiffs, their
New York correspondents, in favor of the Cadiz bank for the amount thus
collected, and sent it to that bank; that the latter bank received the draft
on February eighth; that, in the meantime, on February sixth, the Cadiz bank
had notified the plaintiffs of the existence of the draft and requested them
to hold moneys sufficient to pay it; that, on February ninth, the plaintiffs
telegraphed the Cadiz bank that the Kansas bank had not sufficient funds
to meet the draft; that the Cadiz bank replied requesting the plaintiffs to
apply to the payment of the draft such moneys of the Kansas bank as it
had; that the draft was forwarded, and was, on February tenth, paid in full by
the plaintiffs to the defendant.

*Held,* that a case of mistake was not made out, and that there could be no recovery,
for the amount paid beyond the funds of the Kansas bank in the plaintiffs'
hands.

That the draft was paid in full, in the usual course of business, when the plaintiffs
knew that they had not sufficient funds of the Kansas bank to enable them to
make full payment.

That a protest was necessary in order to enable the defendant or the Cadiz bank
to hold the drawer, and that the payment by the plaintiffs prevented protest.
(O'BRIEN, J., dissenting.)

EXCEPTIONS of the plaintiffs, Winthrop S. Gilman and Theodore
Gilman, directed to be heard in the first instance at General Term,
the complaint having been dismissed after a trial at the New York
Circuit before the court and a jury.

The action was brought to recover an amount claimed to have
been paid by mistake upon a draft.

This draft the Cadiz bank received on February 8, 1891, was dated
January 23, 1891, and was in the following form :

## FARMERS' STATE BANK OF AUGUSTA.

$638.60.                           Augusta, Kansas, *Jan.* 23d, 1891.

Pay to the order of D. B. Welch, Pres., six hundred and thirty-eight $\frac{60}{100}$ dollars.

E. R. GRANT,
*Cashier.*

To Gilman, Son & Co., New York.

Written across face: "Gilman, Son & Co. Paid Feb. 10, 1891. 62 Cedar St., N. Y."

Indorsed: Pay E. Scofield, cashier, or order, for collection account of First National Bank of Cadiz, O. I. C. Moore, Cashier. First Natl. Bank, N. Y. Feb. 10, 1891. Paid.

*H. B. Closson*, for the plaintiffs.

*Fisher A. Baker*, for the defendant.

Patterson, J.:

This is an appeal from a judgment entered on the dismissal of the complaint at circuit. The action was brought to recover back a sum of money which the plaintiffs claim was paid by mistake on a draft or bill of exchange presented to them by the defendant and paid on the 10th day of February, 1891. There is no dispute as to the facts, which are, in brief; that a Mrs. Cockran, living at Cadiz, in Ohio, deposited for collection, with a bank located and doing business at that place, a bond of a Kansas township. That bond was sent by the Ohio bank to a Kansas bank, which collected its amount on the 23d of January, 1891. The plaintiffs were the New York correspondents of the Kansas bank, and on the day last named that bank, by its cashier, drew a sight draft on the plaintiffs, which was, after some delay, received by the Cadiz bank, and was forwarded by that bank to the defendant for collection. Meantime, and on the sixth of February, the Cadiz bank notified the plaintiffs of the existence of the draft and requested them to hold moneys of the Kansas bank sufficient to meet it. On the ninth of February the plaintiffs telegraphed the Cadiz bank that the drawer had not sufficient funds to meet the draft. On the same day the Cadiz bank, in reply to the telegram last referred to, requested, by telegraph,

the plaintiffs to apply to the draft what funds they had of the Kansas bank. There is nothing in the case to show the exact state of the account between the drawing bank and the plaintiffs, but there were several transactions had between them, intermediate the twenty-third of January and the tenth of February. On the last-named day, and, as appears from the letter and telegrams above referred to, the plaintiffs, with full knowledge of the fact that there was not enough money in their hands to the credit of the account to which the draft was to be charged, paid it in full to the defendant. The next day the plaintiffs made reclamation, not of the whole amount paid, but only of the amount of the deficiency in the account of the Kansas bank. There is nothing in the testimony to establish mistake of the plaintiffs. The only witness who testified on that subject is Burnham, the plaintiffs' cashier, and he says he did not know what the balance on hand was to pay the draft until after the payment was actually made. His principals did, however. In the absence of any other testimony, it is quite clear this draft was paid in the usual course of business, and notwithstanding the plaintiffs knew it was not good in full on the day preceding its payment. We do not think a case of mistake was made out, such as would entitle the plaintiffs to recover, and more especially as it is clear that by reason of the payment a protest of the paper was prevented. It was a foreign bill. (*Commercial Bank* v. *Varnum*, 49 N. Y., 275 ) The act of payment, of course, prevented the protest, and before an action could be maintained against the drawer on the draft protest was necessary. (2 Daniel on Neg. Inst., § 926.)

We think the complaint was properly dismissed and that the judgment should be affirmed, with costs.

VAN BRUNT, P. J., concurred.

O'BRIEN, J. (dissenting):

The action was to recover money paid by mistake by the plaintiffs to the defendant upon a draft presented to them for payment. Although the amount involved is not large, the principle is important as determining the rights and duties of drawers, indorsers and drawees upon a foreign bill of exchange; and as the facts are not disputed, and may be briefly stated, it will serve the purposes of clearness to set them forth.

In January, 1891, a Mrs. Cockran, of Cadiz, Ohio, had deposited with the First National Bank of Cadiz, for collection, a bond of the township of Augusta, Kansas. That bank sent the bond for collection to its correspondent, the Farmers' State Bank of Augusta. The Farmers' Bank collected the amount, and on January twenty-third its cashier drew a sight draft on the plaintiffs, their New York correspondents, in favor of the Cadiz bank for $638.60.

It did not appear whether or not the balance of the Augusta bank, with the plaintiffs when it drew, was then good for this amount or not. There were subsequent drafts upon them, presented, however, before this, which reduced the balance; but, on the other hand, deposits may have been made in the meantime.

This draft the cashier of the Augusta bank forgot to mail to the Cadiz bank, being just then about to abscond. He did abscond and his bank failed. Hearing of this the Cadiz bank telegraphed to Augusta for news of the bond, with the result that the draft in question was found and mailed to the Cadiz bank as it was advised by wire. Thereupon, on February sixth, before receiving the draft itself, the Cadiz bank wrote to the plaintiffs asking them to hold an amount to cover the draft, but before receiving the reply they paid the amount of the draft to their customer. When received they mailed the draft to their New York correspondent, the defendant. The plaintiffs, after the payment to the depositor by the Cadiz bank, replied that the account of the Farmers' Bank was not good for the amount of the draft. Thereupon the Cadiz bank telegraphed the plaintiffs to apply any amount in their hands on the draft, and to the defendant to accept partial payment thereof.

This draft, however, having been presented with some thirty others by the defendant to the plaintiffs, and the plaintiffs' cashier, having overlooked the fact that there was not sufficient funds in hand for the purpose, paid the draft in full. On the next day the mistake was discovered, and a demand was made upon the defendant for the return of the amount of the overdraft, which was refused.

There can be no question upon the evidence but that the payment of the draft was not a voluntary payment, but was made by the plaintiffs under a mistake. Unless, therefore, there is some other ground or principle that would prevent a recovery the plaintiffs were entitled, as against the defendant, who was the mere agent of the

Cadiz bank, and against the Cadiz bank itself, to recover the money thus paid by mistake.

The ground upon which the complaint was dismissed was that the plaintiffs sue upon the bill of exchange which they failed to protest, on the day when the demand was made, and that by reason of that failure to protest the defendant has lost its claim against the drawer. We shall confine our attention to a determination as to whether this ruling was correct; for though some question is made as to the strength of the plaintiffs' case upon the theory of the payment of the money by mistake, had this latter ground been relied upon, it might under permission, to be obtained from the court, have been strengthened by other testimony. In other words, we think that this nonsuit must be sustained, if at all, upon the ground upon which it was asked, and granted unless there was some other ground upon which it would have been impossible for the plaintiffs, if their attention had been called to it, to obviate it by further proof.

We have been referred to no such other ground, and, as stated, it remains but to consider whether the ground relied upon for the nonsuit, viz., that the failure to protect the bill on the day the demand was made, will prevent a recovery. As the plaintiffs were the drawees of the bill of exchange, there was not, under the law governing commercial paper, any obligation upon them to protest the paper at all, and their failure to protest is, therefore, no bar to their recovery.

It may, however, be insisted, inasmuch as the defendant, for the purpose of charging the drawer, would undoubtedly have been required to protest the paper, that the payment of the money and the situation in which the defendant was thus placed, by the possession which the plaintiffs had of the draft prevented it from discharging its duty to protest the draft. This presents the question upon which we think the rights of the parties depend. And at the outset we do not agree with the claim of plaintiffs, that the fact that there were not funds sufficient in their hands to pay the draft in full would have relieved the defendant from the obligation of protesting it in order to hold the drawer.

It is only in cases where there are, to the knowledge of the drawer, no funds, or where, subsequent to the drawing of the draft, the funds are taken out, or it is clear that the drawer has no reasonable expecta-

tion that the draft will be accepted, that presentation and protest may be unnecessary. The reason for this is that the act of the drawer is a fraud.

The rule is stated in Chitty on Bills (444) as follows : "If at any time between the drawing of the bill and its presentment and dishonor, the drawee had some effects or property of the drawer in his hands, though insufficient to pay the amount, he will, nevertheless, in general, be entitled to notice of the dishonor, and the laches of the holder will discharge him from liability." (12th Am. ed.)

Assuming, however, that the obligation rested upon the defendant of protesting the draft, it remains to be determined whether the mistake prevented the defendant from discharging this duty, which, if it did, by relieving the drawer, would prevent the plaintiffs from recovering the overdraft from the defendant.

We shall consider, therefore, the motion for a nonsuit as though made upon the ground that the plaintiffs, by their delay in discovering the mistake, had made it impossible for the defendant to protest the draft, and that the defendant would, therefore, become answerable in damages to the Cadiz bank if they had returned the money. The answer to this claim is, that the situation was in no way changed by the failure of the plaintiffs to discover their mistake until the morning of the day following the presentment of the draft. If the defendant had then acceded to the demands of the plaintiffs, and returned the payment as made by mistake, they could have protested the draft, and notified the drawer equally as well as on the day before.

We assume that the principle will not be disputed that the protest of a bill can always be made on the business day next succeeding that of presentment. (*Smith* v. *Poillon*, 87 N. Y., 590 ; *Farmers' Bank* v. *Vail*, 21 id., 485 ; *Burkhalter* v. *Second Nat. Bank*, 42 id., 538.) Under the authority of these cases, as the draft was only received by the defendant on the tenth, it could, on returning on the eleventh the payment made by mistake on the tenth, again have presented the draft for payment, and on its being refused immediately have protested it and given notice to the drawer, and it would thereby have been duly charged.

Where, as here, therefore, the mistake was discovered in time to enable the defendant to correct the same and discharge its duty to its principal by protesting the draft as against the drawer, it should

not be allowed to take advantage of the fact that the draft by being paid was in the possession of the plaintiffs, because such possession could have been recovered by the repayment of the money when demand was made therefor.

In our view upon the facts, the discharge of the drawer from liability because of the non-protest of the bill is not chargeable to the plaintiffs, but is directly the result of what must be considered the indefensible position assumed by the defendant's principal, the Cadiz bank, who, with full knowledge of all the facts that there was not money sufficient to pay the same, had instructed the defendant to receive partial payment, and when, through a mistake, it had obtained possession of the whole amount, insisted on retaining the same illegally and unjustly as against the plaintiffs.

This circumstance alone, that the Cadiz bank had requested the plaintiffs to make, and the defendant to accept partial payment, would absolve the defendant from the obligation of protesting. Such a request was inconsistent with the right to require protest of the draft, and must be considered as an express waiver of it. The Cadiz bank knew that in the regular course of business the draft would be protested, and notwithstanding this they telegraphed to the plaintiffs and defendant to make and accept partial payment, after which it would, of course, be impossible to protest the draft for the reason that the mercantile law knows no such thing as protest after partial payment of commercial paper, or the protest of partially paid negotiable paper.

The defendant owed a duty simply to the Cadiz bank, and to no one else, and the Cadiz bank had the right to instruct the defendant, as its agent, to pursue a course which, while it might release the drawer, who at the time was known to have failed, would at the same time secure the partial payment of the draft.

Under these circumstances, it would be impossible, it seems to us, for the Cadiz bank to maintain an action for damages against the defendant if it had returned the money which it had received by mistake.

Our conclusion, therefore, is that the ground upon which the nonsuit was placed, viz., the failure of the defendant to protest the draft, there being no such duty upon the plaintiffs, as drawees, is untenable; and that the other theory upon which it is sought

to justify the nonsuit, viz., that the release of the drawer was due to the mistake of the plaintiffs, thus barring a recovery, is not supported by the facts in the case or by the authorities bearing upon the subject.

We think, therefore, that the exceptions should be sustained and a new trial ordered, with costs to the plaintiffs to abide the event.

Judgment affirmed, with costs.